**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DEBORAH LANE, et al., | Case No.  16-cv-06790-BLF |
| Plaintiffs, | |
| v. | **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| LANDMARK THEATRE CORPORATION, et al., | [Re:  ECF 69, 76] |
| Defendants. | |

Plaintiffs Deborah Lane and John Daugherty bring suit against the owners and operators of the Nickelodeon Theater, a movie theater in Santa Cruz, California, for allegedly failing to comply with state and federal accessibility laws.  Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  As set forth below, the Court finds that each side is entitled to summary judgment as to certain claims, but that several other claims must proceed to trial.  The Court thus GRANTS IN PART and DENIES IN PART Plaintiffs' motion for summary judgment, ECF 69, and Defendants' motion for summary judgment, ECF 76.

## I.     BACKGROUND

Because both sides have filed cross-motions, the facts cannot be set forth in the light most favorable to the non-moving party.  Instead, the Court briefly summarizes the basis for the suit, focusing on the undisputed facts and denoting the assertions made by each side.

The Plaintiffs are Deborah Lane and John Daugherty, a couple living in Santa Cruz, California.  ECF 70 ("Lane Decl.") ¶ 3.  Lane attests that, due to various disabilities affecting her spine, neck, feet, and legs, she is "unable to stand or walk independently" and therefore "use[s] a motorized wheelchair for ambulation."  *Id.* ¶ 2.  She further attests that doctors have diagnosed her

United States District Court
Northern District of California

1    condition as permanent. *Id.*; *see also* ECF 70-1 (Letter from Dr. J. Spiegel of the Santa Cruz

2    County Health Department). Daugherty states that he was born with Spastic Cerebral Palsy, as a

3    result of which he "can only stand for short periods of time." ECF 71 ("Daugherty Decl.") ¶ 2.

4    Consequently, he, like Lane, "use[s] a motorized wheelchair for ambulation." *Id.*

5        According to Plaintiffs, they are avid movie-goers. Daugherty Decl. ¶ 3; Lane Decl. ¶ 3.

6    One of the theaters they have frequented is the Nickelodeon Theater (the "Nick") located at 210

7    Lincoln Street, Santa Cruz, California. Daugherty Decl. ¶ 3; Lane Decl. ¶ 3. The Nick was

8    originally built in 1969 as a one-screen movie theater. ECF 72-3 (initial permits and plans for

9    construction of the Nick, received from the Santa Cruz Building Department); *see* ECF 72

10   ("Clefton Decl.") ¶ 4; ECF 76-1 ("Fant Decl.") ¶ 4. It was later altered to become the four-screen

11   theater it is today, which Defendants Landmark Movie Theaters and Silver Cinemas Acquisition

12   Co.[1] acquired in 2015. Fant Decl. ¶ 4; ECF 72-6 at 3 (deposition of Michael Fant from

13   2/19/2019). Plaintiffs say that they enjoy going to the Nick because it is only four blocks from

14   their home and because it shows independent films that often are not screened elsewhere.

15   Daugherty Decl. ¶ 3; Lane Decl. ¶ 3.

16       Specifically, the instant suit is based on two visits Plaintiffs made to the Nick, one on June

17   18, 2016 and another on August 7, 2016. Daugherty Decl. ¶¶ 5-10; Lane Decl. ¶¶ 5-10; ECF 39

18   (First Amended Complaint ("FAC")) ¶¶ 15-17. Plaintiffs attest that on June 18, 2016, they went

19   to the Nick to watch a movie called *Maggie's Plan*. Daugherty Decl. ¶¶ 6-7; Lane Decl. ¶¶ 6-8.

20   Plaintiffs both claim to have encountered numerous barriers to access at the Nick. For instance,

21   Lane states that when she used the restroom, her wheelchair "got stuck in the front part of the stall

22   due to its small size." Lane Decl. ¶ 8. Lane further states that she "twisted [her] back trying to

23   maneuver into the stall" but was ultimately "unable to actually use the toilet." *Id.* Daugherty

24   allegedly encountered other barriers during that visit, including: the entrance doors to the Nick

25   were too heavy, and Daugherty required assistance to open them; the height of the concessions

26

27   _____

[1] Defendants have submitted evidence that Landmark Movie Theaters is the fictitious name used
by Silver Cinemas Acquisition Co. and not a separate entity. ECF 76-1 ("Fant Decl.") ¶ 1.
Plaintiffs do not dispute this evidence. Nevertheless, for consistency with the operative FAC and
the parties briefing, the Court refers to "Defendants" in the plural.

28

counter was too high, and Daugherty required assistance to complete his transaction. Daugherty Decl. ¶ 7.

Plaintiffs returned to the Nick on August 7, 2016 to see a movie called *Hunt for the Wilderpeople*. Daugherty Decl. ¶ 9; Lane Decl. ¶ 10. They allege that they again experienced several accessibility barriers. In particular, Lane had an urgent need to use the restroom and her wheelchair became stuck in the stall, as it had on her previous visit. Lane Decl. ¶ 11. Unable to use the Nick's restroom, Lane "tried to get home quickly in order to use the restroom there" but "did not make it" and had an "embarrassing urination accident" before reaching her home. *Id.* Daugherty likewise needed to use the men's restroom. Though he was able to access the toilet, "the placement of the grab bars made it difficult" for him to do so. Daugherty Decl. ¶ 10. In addition, "[d]ue to the size and configuration of the toilet stall," Daugherty was unable to close the stall door while he was using it and then was unable to flush the toilet afterwards. *Id.* Plaintiffs say that their experiences on both visits caused them great embarrassment and physical discomfort. Daugherty Decl. ¶¶ 8-10; Lane Decl. ¶¶ 8-9, 11. As a result, they have been deterred from returning to the Nick, despite wanting to see movies being shown there. Daugherty Decl. ¶ 11; Lane Decl. ¶ 12.

On November 23, 2016, Plaintiffs filed their original Complaint, ECF 1. After proceeding as mandated by General Order No. 56 for the Northern District of California, the parties were unable to resolve the case. Accordingly, the parties moved for administrative relief pursuant to General Order No. 56 and Civil Local Rule 7-11 and this Court granted the motion. ECF 26. The parties then stipulated to the filing of the operative First Amended Complaint ("FAC"), ECF 39, the sole purpose of which was to add allegations of notice to Defendants of Plaintiffs' claimed access barriers, as required by *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011). ECF 38.

The FAC identifies 66 barriers to disabled access at the Nick. *See* FAC ¶ 19. They are:

**Exterior Ticket Windows:**
1. The slope of the ground surface at the two ticket windows has a slope of more than 1:48; measured at 3.8%.
2. There is not a ticket window with a transaction counter 34" maximum above the ground surface; measured at approx. 42" and 43-1/4".

3. The height of the call button is more than 54" (2010 ADAS safe harbor); measured at approx. 55-1/2" AFF [Above Finished Floor].

**Entry Door:**
4. The threshold is more than 1/2" above the exterior walk surface; measured at approx. 1-1/4".
5. The effort to operate the door exceeds 5lbs. force; measured at approx. 8.5lbs force.
6. The required tactile exit sign is not provided.
7. A loose floor mat is provided at the exterior side of the entry door and can roll up and create a tripping hazard.

**Theatre Lobby:**
8. A loose floor mat is provided at the exterior side of the entry door and can roll up and create a tripping hazard.
9. There is not a compliant section of snack counter. The height of the counter surface is more [than] 34" AFF; measured at approx. 39-1/2" AFF.
10. There is not a compliant section of counter. The height of the counter surface is more [than] 34" AFF; measured at approx. 36" AFF.
11. The operable part of the water dispenser is more than 46" AFF and over an obstruction more than 34" max AFF (the counter is at 36" AFF, see Item 10, above).

**Theatre Lobby – Accessible Route:**
12. An accessible route is not provided from the building entrance to theater number [1] or to the men's and women's restrooms. The slope of the route of travel exceeds 1:20 for a [walkway] and 1:12 for a ramp and the cross slope exceeds 1:48; the slope is measured up to 16.7% and cross slope up to 12.2%.
13. The turn approaching the men's restroom is not compliant. The width at the turn is 36" and the width leaving the turn is less than 38".

**Men's Restroom:**
14. The sign does not contrast with the door; it is not a light sign on the dark door.
15. The maneuvering space does not extend 18" beyond the strike side jamb; measured at approx. 8-1/4".
16. The effort to operate the door exceeds 5lbs. force; measured at approx. 8lbs force.
17. The closing speed is less than 5-seconds; measured at 3.46 seconds.
18. The Clearance to the apron is less than 29"; measured at 27-1/2" AFF.
19. The required clear space and knee and toe space is not provided; there is a barrier placed under the lavatory that encroaches into the required knee and toe space.
20. The reflective surface of the mirror is more than 40" AFF; measured at approx. 55-3/4" AFF.
21. The urinal rim is more than 17" AFF; measured at approx. 17-1/2" AFF.
22. The required clear space is not provided; the width of the stall is less than 60" inside; measured at approx. 38-1/2".
23. The toilet is not centered 17" to 18" from the side wall; it is located approx. 19-1/8" from the side wall.
24. The required maneuvering space is not provided; the measured space in front of the toilet is approx. 37".
25. The rear wall grab bar is not positioned correctly in relation to the centerline of the toilet.

26. The toilet paper dispenser is more than 7" to 9" in front of the toilet.
27. The coat hook is more than 48" AFF; measured at 59-3/4" AFF.

**Women's Restroom:**
28. The sign does not contrast with the door; it is not a light sign on the dark door.
29. The maneuvering space does not [measure] 60" measured perpendicular to the door in the closed position; measured at approx. 30".
30. The effort to operate the door exceeds 5lbs. force; measured at approx. 9lbs force.
31. The slope of the floor is greater than 1:48; measured at 2.8%.
32. The Clearance to the apron is less than 29"; measured at 27-1/2" AFF.
33. The required clear space and knee and toe space is not provided; there is a barrier placed under the lavatory that encroaches into the required knee and toe space.
34. The reflective surface of the mirror is more than 40" AFF; measured at approx. 52-1/2" AFF.
35. The required clear space is not provided; the width of the stall is less than 60" inside; measured at approx. 35-1/2".
36. A pull is not provided on the inside of the compartment door.
37. The toilet is not centered 17" to 18" from the side wall; it is located approx. 18-3/4 from the side wall (with the toilet paper dispenser).
38. The required maneuvering space is not provided; the measured space in front of the toilet is approx. 41".
39. The rear wall grab bar is not provided.
40. The toilet paper dispenser is more than 7" to 9" in front of the toilet.
41. The coat hook is more than 48" AFF; measured at 68" AFF.
42. The top of the outlet at the seat cover dispenser is more than 40" AFF; measured at approx. 60" AFF.

**Theatre One:**
43. The bottom 10" of the push side of the door is not a smooth and uninterrupted surface; a kick-down door stop is mounted within the required smooth area.
44. The clear width of the entry door to theater 1 is less than 32"; measured at approx. 27-3/4".
45. The effort to operate the door exceeds 5lbs. force; measured at approx. 8lbs and 12lbs force.
46. The slope of the route of travel at the front of the theatre leading to the exit door exceeds 1:20 (5%); measured up to 12.5%.
47. Five accessible locations are provided; one seat location at the top of the theater adjacent the entry/exit door. The other four accessible seating locations are provided at the 2nd and 3rd rows from the front. This distribution of 4/5 of the accessible seating location[s] provided within the first 3 rows of seating does not meet the requirement for equivalent or better than average viewing angle provided in the facility.

**Theatre Two:**
48. The bottom 10" of the push side of the door is not a smooth and uninterrupted surface; a kick-down door stop is mounted within the required smooth area.
49. The maneuvering space does not extend 18" beyond the strike side jamb; measured at approx. 6-1/2".
50. The effort to operate the door exceeds 5lbs. force; measured at approx. 12lbs force.

5

51. The closing speed is less than 5-seconds; measured at 2.10 seconds.
52. Two accessible locations are provided at the 2nd row [from] the front. This distribution of seating does not meet the requirement for equivalent or better than average viewing angle provided in the facility.

**Theatre Three:**
53. The bottom 10" of the push side of the door is not a smooth and uninterrupted surface; a kick-down door stop is mounted within the required smooth area.
54. The maneuvering space does not extend 18" beyond the strike side jamb; measured at approx. 6-1/2".
55. The effort to operate the door exceeds 5lbs. force; measured at approx. 10.5lbs force.
56. The closing speed is less than 5-seconds; measured at 2.33 seconds.
57. The wheelchair space at the back portion of the theater . . . can be entered only from the side and the depth of the space is less than 60"; measured at approx. 39".

**Theatre Four:**
58. The bottom 10" of the push side of the door is not a smooth and uninterrupted surface; a kick-down door stop is mounted within the required smooth area.
59. The maneuvering space does not extend 18" beyond the strike side jamb; measured at approx. 5-1/2".  Also the clear space does not extend 60" measured perpendicular to the door in the closed position; measured at 52".
60. The clear space does not extend 48" measured perpendicular to the door in the closed position; measured at 19-1/2".
61. The effort to operate the door exceeds 5lbs. force; measured at approx. 10lbs force.
62.  The closing speed is less than 5-seconds; measured at 2.72 seconds.
63. Two accessible locations are provided at the front row of seating. This distribution of seating does not meet the requirement for equivalent or better than average viewing angle provided in the facility.

**Exterior Entry Court:**
64. The entry court is not accessible; barriers include excessive slopes and changes in level.
65. The cross slope (including slope in any direction where movement is not limited to a specific direction) exceeds 1:48 at multiple locations throughout the entry court.
66. The change in level is greater than 1/4" vertical occur between concrete sections where the form boards are not at the same elevation as the concrete.

FAC ¶ 19 (bullets substituted for numbers).  These same barriers are described in a report prepared by the Plaintiffs' expert, Mr. Gary Waters, based on a site inspection conducted on April 19, 2017. ECF 73-2 ("Waters Report") at 11-38; ECF 73 ("Waters Decl.") ¶ 5.  For clarity, the Court will refer to each barrier by its number in the above list, which is consistent with the numbering in the Waters Report.

United States District Court
Northern District of California

1  Based on these barriers, Plaintiffs allege that Defendants have violated various state and

2  federal laws, including: (1) the federal Americans with Disabilities Act ("ADA"), *see* FAC ¶¶ 46-

3  55; (2) the California Health and Safety Code §§ 19955 *et seq.*, *see* FAC ¶¶ 10-28; (3) the

4  California Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54, 54.1, *see* FAC ¶¶ 10-28; (4) the

5  California Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51, 52 *see* FAC ¶¶ 29-35;

6  and (5) the California Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*,

7  *see* FAC ¶¶ 36-45.  Plaintiffs seek injunctive relief, damages—including treble damages under the

8  CDPA—and attorney fees and costs.  *See id.* ¶¶ 23-28, p. 22-23.

9  Plaintiffs now move for summary judgment as to all their claims.  ECF 69 ("Pl. Mot.").

10  Defendants not only oppose summary judgment in Plaintiffs' favor, *see* ECF 78 ("Def. Opp. to Pl.

11  Mot."), they seek summary judgment in their favor on all counts, ECF 76 ("Def. Mot.").

12  Plaintiffs, of course, oppose Defendants' motion.  ECF 79 ("Pl. Opp. to Def. Mot.").  The Court

13  heard argument on March 19, 2020.  The parties' cross-motions are now ripe for the Court's

14  decision.

## II.    LEGAL STANDARD

16  Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the

17  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

18  judgment as a matter of law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the

19  basic question is "whether there is a need for trial—whether, in other words, there are any genuine

20  factual issues that properly can be resolved only by a finder of fact because they may reasonably

21  be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

22  To be clear, the mere existence of a factual dispute, by itself, does not necessarily preclude

23  summary judgment. *See Liberty Lobby*, 477 U.S. at 255.  The dispute must be genuine and the

24  disputed fact must be material.  A dispute is only genuine if "the evidence presents a sufficient

25  disagreement to require submission to a jury." *Id.* at 251–52.  In other words, the evidence must

26  be sufficient to support a jury's finding for either side. *See Scott v. Harris,* 550 U.S. 372, 380

27  (2007); *see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587

28  (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the

United States District Court
Northern District of California

1  nonmoving party, there is no 'genuine issue for trial.'").  Furthermore, a fact is only material if it

2  could establish an element of a claim or defense and, therefore, "might affect the outcome of the

3  suit under the governing law." *Liberty Lobby*, 477 U.S. at 248; *see also Celotex Corp. v. Catrett*,

4  477 U.S. 317, 322–23 (1986) (explaining that "a complete failure of proof concerning an essential

5  element of the nonmoving party's case necessarily renders all other facts immaterial").

6        The party seeking summary judgment bears the "initial responsibility of informing the

7  district court of the basis for its motion, and identifying those portions of the pleadings,

8  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

9  which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477

10  U.S. at 323 (internal quotation marks omitted).  When the moving party will have the burden of

11  proof on an issue at trial, it must "affirmatively demonstrate" that no reasonable trier of fact could

12  find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

13  Cir. 2007).  On the other hand, "[w]hen the nonmoving party has the burden of proof at trial, the

14  moving party need only point out 'that there is an absence of evidence to support the nonmoving

15  party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*,

16  477 U.S. at 325).  If a moving party fails to carry its burden of production, then "the non-moving

17  party has no obligation to produce anything, even if the non-moving party would have the ultimate

18  burden of persuasion." *Nissan Fire and Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-

19  03 (9th Cir. 2000).  But if the movant carries its initial burden, the nonmovant "'may not rest upon

20  the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or

21  other sources of evidence that 'set forth specific facts showing that there is a genuine issue for

22  trial.'" *Devereaux*, 263 F.3d at 1076 (quoting Fed. R. Civ. P. 56(e)).

23        The court must view evidence in the light most favorable to the nonmoving party and draw

24  all reasonable inferences in favor of that party. *Weil v. Citizens Telecom Servs. Co., LLC*, 922

25  F.3d 993, 1002 (9th Cir. 2019); *see also Scott,* 550 U.S. at 378.  That is because the court "does

26  not assess credibility or weigh the evidence, but simply determines whether there is a genuine

27  factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).  Where, as here, the parties

28  file cross-motions for summary judgment, the court "review[s] each motion separately, giving the

nonmoving party for each motion the benefit of all reasonable inferences." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017) (internal quotation marks and alterations omitted). It is certainly possible for a court to deny summary judgment to both sides. *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

## III.   UNDISPUTED FACTS

Although Plaintiffs assert various causes of action under state and federal law, they arise out of common facts regarding the Plaintiffs' disabilities and the conditions at the Nick. Hence, in the interest of clarity and to streamline the Court's analysis of the many issues raised by the instant motions, the Court begins by identifying the following undisputed facts.

### A.   As to Plaintiffs' Disabilities

First, with respect to Plaintiffs' disabilities, the Court accepts the following facts as having been established by uncontested evidence:

- Plaintiff Daugherty was born with Spastic Cerebral Palsy, which affects his ability to walk, to maintain balance, and drive; his hand-eye coordination; and his stamina for physical activity. ECF 71 ("Daugherty Decl.") ¶ 2.

- As a result of his disability, Plaintiff Daugherty "can only stand for short periods of time." *Id.*

- As a result of his disability, Plaintiff Daugherty "use[s] a motorized wheelchair for ambulation." *Id.*

- Plaintiff Lane was diagnosed with club feet when she was born. ECF 70 ("Lane Decl.") ¶ 2. She underwent several surgeries to correct the club feet, during one of which a doctor made a mistake. *Id.* That mistake resulted in the removal of one of her ankles and the shortening of her leg by 3/4". *Id.*

- In addition, Plaintiff Lane has been diagnosed with spine and neck deformations, which puts her at risk for spine and neck injury, including possible paraplegia. *Id.* Her condition has been diagnosed as permanent. *Id.*; *see also* ECF 70-1 (Letter from Dr. J. Spiegel of the Santa Cruz County Health Department).

- As a result of her disabilities, Plaintiff Lane is "unable to stand or walk

United States District Court
Northern District of California

1    independently." *Id.*

2    • As a result of her disabilities, Plaintiff Lane "use[s] a motorized wheelchair for

3    ambulation." *Id.*

4    **B.    As to the Conditions at the Nick**

5    Second, as to the conditions at the Nick, Plaintiffs have introduced evidence as to the

6    existence, size, position, and location of the elements they believe constitute barriers to

7    accessibility. Specifically, Plaintiffs engaged an expert witness, Mr. Gary Waters, to make

8    observations and measurements at the Nick. *See* ECF 73 ("Waters Decl.") ¶ 4. Mr. Waters is a

9    Certified Access Specialist ("CASp") in California and provides disability access consulting

10   services as part of his architectural practice, Gary Waters Architectural Corporation. *See* Waters

11   Decl. ¶ 1. Mr. Waters' qualifications—which Defendants do not challenge—are laid out more

12   fully in his resume (ECF 73-1) and his Declaration (Waters Decl. ¶¶ 1-3). As part of the General

13   Order 56 process, Mr. Waters conducted a formal site inspection of the Nick on April 19, 2017.

14   Waters Decl. ¶ 5. He documented his observations and measurements about the conditions at the

15   Nick in his expert report, ECF 73-2 (the "Waters Report"). Plaintiffs have submitted excerpts of

16   the Waters Report in support of their motion for summary judgment.

17   Defendants do not challenge the admissibility of the Waters Report to establish the

18   conditions at the Nick, nor do they dispute the majority of the observations and measurements

19   contained therein. There are, however, a handful of elements for which Defendants say Plaintiffs'

20   measurements are incorrect: Items 5, 16, 30, 45, 50, 55, 61 relating to door opening force, *see* Def.

21   Mot. at 14; Items 7 and 8 relating to floor mats, *see id.*; Items 25 and 39 relating to grab bars in the

22   restrooms, *see id.* at 16; Items 27 and 41 relating to coat hooks in the restrooms, *see id.*; and Items

23   43, 48, 53, and 58 relating to door stops on the doors to each screen, *see id.* The only evidence

24   Defendants introduce to support their competing factual contentions is the declaration of Mr.

25   Michael Fant. *See* ECF 76-1 ("Fant Decl.") ¶¶ 23-32 (attesting to "[t]he current condition of the

26   Theater").

27   Plaintiffs object that Mr. Fant's declaration is not admissible as to the conditions at the

28   Nick, and thus cannot create a genuine factual dispute. Pl. Opp. to Def. Mot. at 5. This objection

is sustained. Mr. Fant is the Senior Vice President of Real Estate and Development for Defendants and was their designated deponent under Federal Rule of Civil Procedure 30(b)(6). Fant Decl. ¶ 1. As such, he states he is "personally familiar with the current condition of the Theater." *Id.* ¶ 5. However, this is only the foundation Fant provides for his knowledge of the conditions at the Nick: He does not attest that he personally conducted an investigation, when he might have done so, or that he took measurements during any investigation. Even if Mr. Fant is an expert witness as Defendants contend, *see* ECF 85 ("Def. Reply") at 6, he must show that his testimony "is based on sufficient facts or data." Fed. R. Evid. 702. Defendants have provided no information about the basis of Mr. Fant's assertions.

Furthermore, the declaration does not offer any specific measurements. For instance, Fant merely states that "[t]he coat hooks in the men's and women's restrooms are mounted not more than 48 inches above the floor," without indicating precisely how high the coat hooks are mounted. *Id.* ¶ 30. In other words, the statements in Mr. Fant's declaration amount to no more than conclusory assertions that Plaintiffs' measurements are incorrect. "Mere conclusory allegations unsupported by factual data" cannot defeat a motion for summary judgment, much less establish a party's entitlement to summary judgment. *Angel v. Seattle–First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981).

For the foregoing reasons, the Court holds that the Fant Declaration is inadmissible to establish the conditions at the Nick. That leaves the Waters Report uncontested. The Court therefore finds that, as a general matter, the descriptions and measurements in the Waters Report represent the conditions at the Nick.

## IV.   DISCUSSION

Both parties move for summary judgment as to the entire FAC, which includes claims under the federal ADA and various state laws.

To briefly outline the statutory framework, Title III of the ADA prohibits discrimination by public accommodations against persons with disabilities. *See* 42 U.S.C. § 12182(a). Such discrimination includes a failure to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with

United States District Court
Northern District of California

11

disabilities." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006 (9th Cir. 2015) (quoting 28 C.F.R. § 36.211(a)).  Whether a facility is "readily accessible," in turn, is defined largely by the ADA Accessibility Guidelines (the "ADAAG Standards"), which "lay out the technical structural requirements of places of public accommodation."  *Id.* (citing 28 C.F.R. §§ 36.304(d), 36.104). The original implementing regulations for the ADA adopted the 1991 version of the ADAAG Standards (the "1991 ADAAG Standards"), republished at 28 C.F.R. Pt. 36, App. D; they have since been replaced by the 2010 version of the ADAAG Standards (the "2010 ADAAG Standards"), codified at 36 C.F.R. 1191, app. B & D (2009).  *See* 28 C.F.R. § Pt. 36, App. B; *see generally Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.*, No. 2:18-CV-01512-BJR, 2019 WL 7157165, at *5 (W.D. Wash. Dec. 3, 2019).  Still, in some cases— depending principally upon when the facility was constructed or last altered—the 1991 ADAAG Standards remain applicable.  *See* 28 C.F.R. §§ 36.304(d), 36.406(a).

Plaintiffs Lane and Daugherty are suing under the ADA to remedy various elements of the Nick they believe are out of compliance with the relevant ADAAG Standards.  They seek injunctive relief, which is the only form of relief the ADA affords private plaintiffs.  *See Oliver*, 654 F.3d at 905; 42 U.S.C. § 12188(a).

Lane and Daugherty have also brought suit under various California statutes.  There are two basic avenues for a plaintiff to make out a claim under California's disability laws.  As will be laid out in greater detail below, a plaintiff can prevail under certain California statutes by proving that the defendant violated the federal ADA.  Alternatively, a plaintiff can prove that the defendant violated California's own accessibility requirements.  Importantly, "because California disability access standards long predate the ADA and ADAAG," they can "sometimes operate to remedy barriers that would not otherwise fall within the ambit of the ADA."  *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1074 (N.D. Cal. 2014).  One of the main sources of California's accessibility requirements for public accommodations is Title 24 of the California Code of Regulations, often referred to as the California Building Code.  *See id.*

There are, of course, specific requirements for each of the relevant statutes, which the parties' motions implicate.  For that reason, the Court separately considers whether summary

12

judgment is appropriate as to each set of claims.  The Court begins with three threshold issues: (1) the scope of Plaintiffs' standing, which affects this Court's jurisdiction; (2) whether certain of Plaintiffs' claims have been rendered moot; and (3) whether this Court should exercise supplemental jurisdiction over Plaintiffs' state law claims.  The Court then addresses sequentially the claims under the federal ADA, the claims under the California Health and Safety Code, the claims under the California Disabled Persons Act, the claims under the Unruh Act, and the claims under the UCL.

### A.    Standing

As a threshold matter, Defendants object that Plaintiffs lack Article III standing to litigate certain of the alleged barriers in federal court.  The Supreme Court's familiar formulation of the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The plaintiff, as "the party invoking federal jurisdiction," "bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

In the Ninth Circuit, it is well-established that a plaintiff who personally encounters an accessibility barrier that interferes with or deters his access to a place of public accommodation has standing to "challenge all barriers in that public accommodation that are related to his or her specific disability."  *Chapman*, 631 F.3d at 947.  That is, a plaintiff "need not have personally encountered all the barriers that impede his access to" the public accommodation in order to have been injured for the purpose of Article III.  *Id.* at 951.  It is enough for the plaintiff to have knowledge of the barrier and be deterred from patronizing the public accommodation because of it; such deterrence constitutes injury-in-fact.  *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1043-44 (9th Cir. 2008).  Importantly, however, the challenged barrier must relate to the plaintiff's specific disability, or else it cannot fairly be said to have caused plaintiff's injury-in-fact.  *See Chapman*, 631 F.3d at 947 n.4., 953; *Rodriguez*, 10 F. Supp. 3d at 1075.  Thus, the Ninth Circuit explained in *Chapman* that "a blind person would have standing to assert an ADA violation where a newly

United States District Court
Northern District of California

1    constructed multi-story facility has elevators lacking floor buttons in Braille, while Chapman, who

2    we assume can see and press the floor buttons, would not." 631 F.3d at 947 n.4.

3        Here, Defendants contend that a subset of the 66 alleged barriers identified by Plaintiffs do

4    not relate to Plaintiffs' specific disabilities, wherefore they lack standing to challenge them. *See*

5    Def. Mot. at 15-16.

6        First, Defendants argue that Plaintiffs cannot challenge Item 6, which is that "[t]he

7    required tactile exit sign is not provided" on the Entry Door, FAC ¶ 19; *see also* Waters Report at

8    12. *See* Def. Mot. at 15. Tactile signs are intended to serve persons with visual impairments, say

9    Defendants, and Plaintiffs do not claim to have any visual impairments. The Court agrees. At the

10   outset, the Court observes that Plaintiffs cite the California Building Code for the tactile sign

11   requirement; they do not assert any violation of the ADA. *See* Waters Report at 12 (citing Cal.

12   Code Reg., tit. 24, § 1013.4 (2016)); *see also* Cal. Code Reg., tit. 24, § 1011.4 (2013).

13   Specifically, the relevant regulations require "[r]aised character and Braille exit signs," also

14   referred to as "tactile exit signs" at various locations in a facility. Cal. Code Reg., tit. 24, § 1013.4

15   (2016); Cal. Code Reg., tit. 24, § 1011.4 (2013). Assuming Defendants have in fact violated these

16   regulations, that violation does not relate to Plaintiffs' disabilities. The Ninth Circuit's example in

17   *Chapman*, though dicta, addresses this precise situation. Chapman, like the instant Plaintiffs, was

18   "unable to walk unassisted" and therefore used a motorized wheelchair when traveling in public.

19   631 F.3d at 943. Also like the instant Plaintiffs, Chapman did not allege or attest that he had

20   visual impairments. Hence, just as Chapman would not be injured by a facility's failure to provide

21   elevator buttons in Braille, *id.* at 947 n.4, Plaintiffs have not shown that they would be injured by a

22   failure to provide exit signs in Braille. *See also Rodriguez*, 10 F. Supp. 3d at 1075 ("Because

23   Rodriguez cannot demonstrate that the stairway safety barriers relate to his particular disability, he

24   cannot demonstrate an 'injury-in-fact' that can be redressed by court order.").

25       The same is true of Items 14 and 28, which are that the men's and women's restroom door

26   signs do not "contrast with the door"; they are not "light sign[s] on the dark door[s]." FAC ¶ 19;

27   *see also* Waters Report at 15. *See* Def. Mot. at 16. Again, assuming that Defendants' restroom

28   door signs do not contrast with the door, in violation of Cal. Code Reg. tit. 24, §§ 11B–

703.7.2.6.1, 11B–703.7.2.6.2 (2016 and 2013),[2] nothing in the record suggests that the alleged violations implicate the Plaintiffs' mobility-related disabilities. Plaintiffs have not indicated, for instance, that the lack of contrast makes it difficult for them to identify the restrooms.

To be clear, the Court is not foreclosing the possibility that persons without visual impairments could challenge the tactile exit sign requirement and the contrasting restroom sign requirements. But even if these requirements do not relate solely to visual impairments, Plaintiffs have not articulated any way in which the alleged violations have or could affect them. As the parties seeking to sue, it is their burden to do so. Accordingly, the Court must DISMISS Plaintiffs' claims as to Items 6, 14, and 28 for lack of subject matter jurisdiction.

On the other hand, the Court finds that, notwithstanding Defendants' objections, Plaintiffs have standing to challenging Items 7 and 8. These items are "loose floor mat[s]" with exposed edges that Plaintiffs say must be fastened to the floor surface pursuant to both state and federal law. FAC ¶ 19; *see also* Waters Report at 12-13 (citing 2010 ADAAG § 302.2 ("Exposed edges of carpet shall be fastened to floor surfaces and shall have trim on the entire length of the exposed edge.")); Cal. Code Reg. tit. 24, § 11B–302.2 (2016) (same); Cal. Code Reg. tit. 24, § 11B–302.2 (2013) (same)). Defendants argue that these alleged barriers do not relate to Plaintiffs' disabilities because "they use wheelchairs and, therefore, are not likely to 'trip' on a floor mat." Def. Mot. at 15. The cited regulations make clear, however, that they are not concerned only with tripping; specifically, "[c]arpets and permanently affixed mats can significantly increase the amount of force (roll resistance) needed to propel a wheelchair over a surface." Advisory to 2010 ADAAG § 302.2. Thus, that Plaintiffs use wheelchairs for mobility—an uncontested fact—suffices to establish their standing to challenge Items 7 and 8.

The Court also rejects Defendants' final standing objection, which is that Plaintiffs lack standing to assert Item 22. Specifically, Defendants argue that Plaintiffs cannot assert Item 22 as a violation of § 5.6.2 of the American Standards Associations Specifications A117.1/1961 (the

---

[2] Plaintiffs indicate that Section 309.4 of the 2010 ADAAG Standards also includes this requirement. *See* Waters Report at 15. That does not appear to be correct. In any event, the Court's analysis is unaffected, as it does not reach the merits of any claim that Items 14 and 28 constitute violations of the ADA.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "1961 ASA Standards"), which, as explained below, is applicable to the Nick pursuant to the

2    California Health and Safety Code. *See infra* Part IV.C.v. Defendants say that § 5.6.2—which

3    provides that "[t]oilet rooms shall have at least one toilet stall that . . . is 3 feet wide," ECF 75-4 at

4    10—is designed for "semi-ambulatory" individuals and not for individuals who use wheelchairs,

5    such as Plaintiffs. It is true that Mr. Gary Waters, one of Plaintiffs' experts, opined in his

6    deposition that the "type of stall . . . prescribed in the ASA" is "really intended for somebody who

7    is not using a wheelchair but may have mobility issues" and needs grab bars to use the toilet

8    facilities. ECF 78-2 (Waters Depo. at 138) (explaining that in stalls wider than 36 inches, grab

9    bars less effective). Mr. Waters further explained that modern accessibility standards refer to two

10   different types of accessible stalls: narrower stalls like the ones prescribed in the ASA and wider

11   stalls that better accommodate wheelchairs. *Id.* (Waters Depo. at 137-38).

12         Mr. Waters's testimony might support a view that, in a scheme with both types of

13   accessible stalls, Plaintiffs would have standing only to challenge the wider type. But in the 1961

14   ASA Standards, there is only one type of accessible stall; there is no provision for a wider stall.

15   The drafters apparently believed that a width of 36 inches was sufficient to accommodate a

16   wheelchair, based on their finding that a standard wheelchair was 25 inches wide when open. *See*

17   1961 ASA Standards, § 3.1. As wheelchair users, Plaintiffs certainly have standing to challenge

18   the lack of an accessible stall. That a stall even wider than the one prescribed by § 5.6.2 would

19   better accommodate a wheelchair does not preclude Plaintiffs from asserting a violation of § 5.6.2.

20   The Court therefore finds that Plaintiffs have standing to challenge Item 22.

21         In sum, then, the Court DISMISSES Plaintiffs' various state and federal law claims as to

22   Items 6, 14, and 28 for lack of standing. The remaining claims may proceed.

23   **B.    Mootness**

24         Defendants also move for summary judgment on the ground that certain barriers have

25   already been remediated, rendering Plaintiffs' claims for injunctive relief moot. Defendants are

26   correct that "[b]ecause a private plaintiff can sue only for injunctive relief (i.e., for removal of the

27   barrier) under the ADA . . . a defendant's voluntary removal of alleged barriers prior to trial can

28   have the effect of mooting a plaintiff's ADA claim." *Oliver*, 654 F.3d at 905. Plaintiffs' claims

for injunctive relief under California state law could likewise be mooted by remediation, though not their claims for damages. *See Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 911 (N.D. Cal. 2019). Here, Defendants claim that they have already fixed Items 17, 51, 56, and 62 relating to door closing speed and Item 11 related to the water dispenser, such that they now comply with all applicable accessibility requirements. *See* Def. Mot. at 15-16.

However, Defendants' only evidence of their alleged remediation efforts is the Fant Declaration. The Court has already held that the Fant Declaration is inadmissible to establish the conditions at the Nick. *See supra* Part III.B. Just as the Fant Declaration cannot create a dispute of fact as to the conditions at the Nick at the time of Mr. Waters's formal site inspection, it is insufficient to show that the conditions later changed. Without any admissible evidence to support Defendants' mootness contentions, the Court must DENY Defendants' motion for summary judgment.

### C.   Supplemental Jurisdiction Over State Law Claims

The other threshold issue concerns only the state law claims: Defendants ask the Court to exercise its discretion to decline supplemental jurisdiction over Plaintiffs' state law claims. Def. Mot. at 22-24.

The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provides that the district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection 1367(c) then lays out several considerations that "may" lead a court, in its discretion, to decline such jurisdiction. These considerations are:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Thus, "the doctrine of supplemental jurisdiction is a flexible one, giving a

district court the power to exercise supplemental jurisdiction over a claim and the discretion whether to exercise such jurisdiction." *Maltzman v. Friedman*, 103 F.3d 139 (9th Cir. 1996); *see Dish Network L.L.C. v. Phu*, No. 13-CV-111-L WVG, 2013 WL 3191081, at *3 (S.D. Cal. June 20, 2013) ("The conferral is in mandatory terms—the court 'shall' have the supplemental jurisdiction—but subdivision (c) . . . gives the court discretion to 'decline to exercise' the supplemental jurisdiction in various circumstances.") (quoting 28 U.S.C.A. § 1367, Practice Commentary at 762).

     In this case, the Court refuses Defendants' invitation to decline supplemental jurisdiction over Plaintiffs' state law claims. The Court notes at the outset that neither party challenges the Court's authority to exercise supplemental jurisdiction under § 1367(a), for Plaintiffs' state law claims plainly share a "common nucleus of operative fact" with the federal claims. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Furthermore, the Court is unpersuaded that the factors in § 1367(c) warrants declining supplemental jurisdiction. Although Plaintiffs' state law claims raise some novel issues of state law, *see* Def. Mot. at 23-24 (citing 28 U.S.C. § 1367(c)(1)), these state law claims do not predominate over the ADA claims, which have not been dismissed. *See* Def. Mot. at 22 (arguing that "dismissal of Plaintiff[s'] ADA claim[s] warrants dismissal of all remaining state-law claims"). Moreover, considering that this case was filed in 2016, the Court believes that retention of the state law claims would serve values of "economy, convenience, [and] fairness." *Bahrampour*, 356 F.3d at 978. Defendants' request that the Court dismiss Plaintiffs' state law claims is DENIED.

### D.     Claims under the Federal ADA

     Having resolved the parties' threshold disputes, the Court now turns to the merits of Plaintiffs' claims. The Court begins, as the parties do, with the federal ADA claims. *See* FAC ¶¶ 46-55. "To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

1        Here, there is no dispute that Plaintiffs Lane and Daugherty have disabilities within the

2   meaning of the ADA.  The ADA defines a "disability" as "a physical or mental impairment that

3   substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A); it then goes on to

4   list "walking" and "standing" as "major life activities," *id.* § 12102(2)(A).  Plaintiffs Lane and

5   Daugherty have provided uncontested declarations describing their disabilities, the effect of those

6   disabilities on walking and standing, and their need for wheelchairs for ambulation.  *See* Lane

7   Decl. ¶ 2; Daugherty Decl. ¶ 2.  The Court therefore finds they are disabled within the meaning of

8   the ADA.  Second, the Defendants admit that they own the Nick.  *See* ECF 10 ¶ 2.  The first two

9   elements are thus easily satisfied.

10        The focus of the parties' dispute is the third element.  As to that element, there is a denial

11   of public accommodations when "features of an accommodation" violate applicable accessibility

12   standards.  *Chapman*, 631 F.3d at 945.  "The Title III accessibility standards come in three broad

13   categories: the 'new construction' provisions, which apply to public accommodations constructed

14   after January 26, 1992; the 'alteration' provisions, which apply to post-January 26, 1992

15   alterations to buildings that existed as of that date; and the 'readily achievable' provisions, which

16   apply to unaltered portions of buildings constructed before January 26, 1992." *Rodriguez*, 10 F.

17   Supp. 3d at 1073; *see* 28 C.F.R. §§ 36.401, 36.401, 36.304.  In this case, the parties agree that only

18   the "readily achievable" provisions apply to the alleged barriers at issue.[3]  Pl. Mot. at 20; Def.

19   Mot. at 6-7.  Under that standard, Defendants are liable for "a failure to remove architectural

20   barriers" in "existing facilities" "where such removal is readily achievable."  *Chapman*, 631 F.3d

21   at 945 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).  As noted above, whether an element of a

22   property constitutes a "barrier" to accessibility is defined principally by the ADAAG Standards.

23   *See Wyatt v. Ralphs Grocery Co.*, 65 Fed. App'x 589, 590 (9th Cir. 2003) ("Violations of

24   ADAAG standards indicate the existence of an architectural barrier.").

25        In their motion, Plaintiffs contend they have undisputed evidence that various elements of

26

27   [3] Although the FAC alleges "on information and belief, alterations, structural repairs or additions since January 26, 1993 have also independently triggered" the requirements of 42 U.S.C. § 12183

28   (governing "new constructions and alterations"), FAC ¶ 51, neither party addresses any possible claims under § 12183 in their motions for summary judgment.

19

United States District Court
Northern District of California

United States District Court
Northern District of California

1  the Nick fail to comply with the ADAAG Standards, and that remediation of those elements is

2  readily achievable.  Defendants oppose Plaintiffs' motion and make their own motion for

3  summary judgment.  Below, the Court begins by reviewing the basic legal framework governing

4  Plaintiffs' ADA claims.  The Court then turns to whether Defendants are entitled to summary

5  judgment and—after concluding they are not—whether Plaintiffs are entitled to summary

6  judgment.

7              **i.  Legal Principles under the ADA**

8       As explained, Plaintiffs' ADA claims are brought under 42 U.S.C. § 12182, which requires

9  a defendant to "remove architectural barriers" in "existing facilities" "where such removal is

10  readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  The ADA's implementing regulations give

11  further content to this requirement.  Specifically, as relevant here, 28 C.F.R. § 36.304 provides

12  that "elements in existing facilities that do not comply with the corresponding technical and

13  scoping specifications for those elements in the 1991 Standards must be modified to the extent

14  readily achievable to comply with the requirements set forth in the 2010 Standards."  28 C.F.R.

15  § 36.304(d)(2)(ii)(B).  Note that there is an implicit exception contained therein, which is then

16  made explicit at subsection (d)(2)(i).  Denoted as a "safe harbor," § 36.304(d)(2)(i) states:

17         Elements that have not been altered in existing facilities on or after
        March 15, 2012 and that comply with the corresponding technical and

18         scoping specifications for those elements in the 1991 Standards are
        not required to be modified in order to comply with the requirements

19         set forth in the 2010 Standards.

20  As it is not contended that the Nick was altered on or after March 15, 2012, elements in the Nick

21  are actionable barriers only if they fail to comply with the 1991 ADAAG Standards.  Thus,

22  Defendants are liable for failing to fix the barriers alleged by Plaintiffs if and only if (1) the Item

23  constitutes a violation of the 1991 ADAAG Standards, and (2) it is "readily achievable" to modify

24  the element to comply with the 2010 ADAAG Standards.

25       The ADA and the implementing regulations also provide further guidance regarding

26  whether the removal of a barrier is "readily achievable."  The ADA defines "readily achievable"

27  as "easily accomplishable and able to be carried out without much difficulty or expense."  42

28  U.S.C. § 12181(9).  In determining whether the removal of a barrier is "readily achievable,"

factors to be considered include:

> (A) the nature and cost of the action needed under this chapter;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id.*  In addition, the implementing regulations for § 12181 give examples of "modest measures that may be taken to remove barriers that are likely to be readily achievable," such as: installing ramps, repositioning shelves, rearranging furniture, repositioning telephones, widening doors, installing offset hinges, repositioning a paper towel dispenser, designating accessible parking spaces, and installing raised toilet seats.  28 C.F.R. § 36.304(b).

### ii.     Defendants' Motion for Summary Judgment

Defendants' motion for summary judgment as to Plaintiffs' ADA claims centers on the second requirement, that remediation be "readily achievable."  Defendants contend that Plaintiffs have an initial burden of production as to whether remediation of the alleged barriers is readily achievable within the meaning of §§ 12181, 12182.  Defendants argue both that Plaintiffs have failed to meet that burden and that remediation is not readily achievable as a matter of law.  Def. Mot. at 7-10.

"This circuit has yet to decide who has the burden of proving that removal of an architectural barrier is readily achievable."  *Moore v. Robinson Oil Corp.*, 588 Fed. App'x 528, 529–30 (9th Cir. 2014) (internal quotation marks omitted).  Defendants urge the Court to follow the Tenth Circuit's decision in *Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership I*, 264 F.3d 999 (10th Cir. 2001).  *See* Def. Mot. at 6-8.  *Colorado Cross* lays out a burden-shifting framework under which "Plaintiff must initially introduce evidence tending to establish that the proposed method of architectural barrier removal is "readily achievable" . . . .

United States District Court
Northern District of California

United States District Court
Northern District of California

Only if Plaintiff satisfies this initial burden does the burden of persuasion shift to Defendant to prove that the requested barrier removal method is not readily achievable." *Id.* at 1007.  The *Colorado Cross* court further indicated that a plaintiff may satisfy his burden by presenting "a specific design which would be easily accomplishable and able to be carried out without much difficulty or expense." *Id.* at 1009.

Several district courts in this Circuit have applied the *Colorado Cross* burden-shifting framework.  *See, e.g.*, *Rodgers v. Chevys Restaurants, LLC*, No. C13-03923 HRL, 2015 WL 909763, at *3 (N.D. Cal. Feb. 24, 2015); *Kong v. Silver Liquor Mkt. & Laundryland Inc.*, No. 2:18-CV-02322-SVW-SK, 2018 WL 8799887, at *2 (C.D. Cal. Nov. 5, 2018).  At the same time, the Court recognizes that the Ninth Circuit rejected the *Colorado Cross* approach in evaluating barrier removal in historic facilities under 28 C.F.R. § 36.405 and ADAAG § 4.1.7.  *See Johnson v. VN All. LLC*, No. 18-CV-01372-BLF, 2019 WL 2515749, at *6 (N.D. Cal. June 18, 2019) (citing *Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008)).  The *Foley Estates* court instead placed the burden of production on the defendant, "the party with the best access to information regarding the historical significance of the building" and thus "the best understanding of the circumstances under which that designation might be threatened." 531 F.3d at 1048.  The Ninth Circuit expressed its desire not to require an ADA plaintiff to undertake the "heroic" task of presenting "detailed plans, impact statements, engineering studies, and permits" simply to meet a threshold burden of production.  *Id.* at 1048-49.  Plaintiffs ask the Court to apply that logic to barrier removal in all existing facilities under 28 C.F.R. § 36.304, which some courts have done.  *See, e.g.*, *Rodriguez v. Barrita, Inc.*, No. C 09-04057 RS, 2012 WL 3538014, at *11 (N.D. Cal. Mar. 1, 2012).

The Court notes that it has previously applied *Colorado Cross*, but only in deciding motions for default judgment where this issue was not the focus of the Court's ruling.  *See, e.g.*, *Ridola v. Chao*, No. 16-CV-02246-BLF, 2018 WL 2287668, at *10 (N.D. Cal. May 18, 2018).  In the summary judgment context, by contrast, the issue comes into sharper focus.  After all, default judgment requires only well-pleaded factual allegations in the complaint—a burden that is easily met when uncontested.  At summary judgment, by contrast, the Court can evaluate which party

1    carries the burden of proof and persuasion in the context of the particular facts of the case and the
2    overall legislative scheme.

3    　　　Fortunately, the Court may leave the question of which party bears the burden of
4    production on the "readily achievable" issue to another day: The Court finds that, even if Plaintiffs
5    have the burden, they have marshaled sufficient evidence to satisfy it.  Plaintiffs have introduced
6    two reports by Mr. Steve Schraibman, a licensed general contractor, architect, certified
7    professional cost estimator, and CASp. Plaintiffs engaged Mr. Schraibman as an expert witness to
8    evaluate, *inter alia*, the "reasonable remediation" to remove the alleged barriers which exist and
9    the estimated cost of such remediation.  *See* ECF 74 ("Schraibman Decl.") ¶¶ 1-6.  Mr.
10   Schraibman's first report proposes specific fixes for each of the 66 Items in the FAC and the
11   associated cost.  ECF 74-2 ("Schraibman Report").  The estimated total cost to remedy all 66
12   Items is $60,496.  *Id.* at 17.  Mr. Schraibman also prepared a supplemental report evaluating the
13   cost of constructing a single accessible unisex restroom as an alternative to modifying the existing
14   Men's Restroom and Women's Restroom.  ECF 74-4 ("Schraibman Supp.").  The estimated total
15   cost for this alternative restroom is $23,257.

16   　　　Defendants ask for summary judgment on the ground that this evidence falls short of
17   Plaintiffs' burden of production because Mr. Schraibman's opinions are "bare bones" and
18   insufficiently detailed.  Having reviewed both of Mr. Schraibman's reports, the Court disagrees.
19   For each of the 66 Items, Mr. Schraibman has clearly laid out a description of the work to be done
20   and the cost for that work; he has even included a breakdown of cost between labor and materials.
21   Take for instance Item 9, which relates to the height of the snack counter.  Mr. Schraibman
22   proposes the following scope of work:

> Remove a 3-foot wide section of the merchandise service counter . . .
> adjacent to the ticket window counter.  Remove the 4-inch base board
> and an additional 2-inches from the lower section.  Reinstall the 3-
> foot wide section of the service cabinet at between 28" – 34" to code.

Schraibman Report at 4.  Mr. Schraibman estimates the cost at $260, $80 for materials and $180
for labor.  He also provides the following comments:

> The counter is made of different sections and this 3-foot section is
> mechanically fastened to the adjacent sections either side and can be

United States District Court
Northern District of California

23

1
2
3

> easily removed to be remodeled.  This adjustment will thus serve both the interior ticket counter and the concession services.  In addition there will be no need to order a new replacement counter and will significantly reduce any possible / potential down-time of the specific area.  Additionally, there are no plumbing lines or electrical issues claimed by defendant.

4   Note that this solution also takes care of Item 10.  This same level of support and detail is

5   provided for all 66 Items and for the alternative unisex restroom.  The Court is therefore satisfied

6   with the foundation and specificity of the evidence provided by Mr. Schraibman.

7           Second, Defendants say that a cost of approximately $60,000 to remedy the 66 barriers is

8   "not readily achievable" "[a]s a matter of law."  Def. Mot. at 10.  But that assertion is wholly

9   unsupported.  Indeed, Defendants admit that they "voluntarily waived the 'financial resources'

10  factor of their readily achievable defense"; yet, they maintain that "the costs are objectively

11  excessive."  Def. Opp. to Pl. Mot. at 5; *see* ECF 72-10 at 8-9.  On this point, Defendants make

12  only conclusory assertions that the various fixes "would be very costly" and "would require

13  closing the Theater."  Def. Mot. at 10-11.  Under these circumstances, the Court cannot agree that

14  $60,000 is so great a figure that no reasonable trier of fact could find remediation to be readily

15  achievable.  In the Court's view, Mr. Schraibman's proposed fixes could plausibly be considered

16  "easily accomplishable" and "able to be carried out without much difficulty or expense," as

17  required for them to be "readily achievable."

18          Accordingly, Defendants' motion for summary judgment on the ADA claims on the above-

19  discussed grounds is DENIED.

20          **iii.    Plaintiffs' Motion for Summary Judgment**

21          The Court now turns to Plaintiffs' motion for summary judgment.  The Court's first task is

22  to identify the scope of the motion that is presently before the Court.  The problem is that

23  Plaintiffs make an undifferentiated request for summary judgment as to all their ADA claims.  Pl.

24  Mot. at 8-9.  In so doing, Plaintiffs have not clearly laid out how or even whether each of the

25  barriers alleged in the FAC violates the ADA.  The FAC simply alleges generally that all 66 of the

26  listed barriers violate the ADA, *see* FAC ¶¶ 50-51; it does not specify which particular

27  accessibility requirements are implicated by the alleged barriers.  Nor do Plaintiffs' briefs clearly

28  identify which of the 66 barriers are alleged to violate the ADA (rather than California

United States District Court
Northern District of California

United States District Court
Northern District of California

1   accessibilities standards alone).  This failure has made it difficult for the Court to determine which

2   barriers Plaintiffs mean to assert under the ADA—let alone which ones are actionable and entitled

3   to summary judgment.

4          The Court emphasizes that Plaintiffs, as the moving parties, have the affirmative duty

5   under Rule 56 to demonstrate their entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P.

6   56(a).  Moreover, Plaintiffs must do so with specificity, for the Court is not required to "perform[]

7   the lawyer's duty" of setting forth the legal and factual basis for each claim.  *Carmen v. San*

8   *Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that, in deciding a

9   motion for summary judgment, a district court need not consider materials outside the motion

10  papers and information cited therein "with adequate references so that it could conveniently be

11  found"); *see also Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990) (The moving party has the

12  burden of "identifying for the court those portions of the materials on file that it believes

13  demonstrates the absence of any genuine issues of material fact.").  That is so even as to the Items

14  that Defendants do not specifically challenge.  *See Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th

15  Cir. 2003).

16         That said, the Court has endeavored to discern Plaintiffs' claims based on the expert report

17  by Mr. Gary Waters, which lists each barrier and corresponding provisions of the ADAAG

18  Standards, if any.  *See* Waters Report at 11-38 (table).  However, the Court will not strain to

19  evaluate any of Plaintiffs' claims for which the relevant facts and law are not easily found.

20         Turning to the Waters Report, Mr. Waters apparently identifies 48 of the 63 actionable

21  barriers (excluding the three as to which Plaintiffs lack standing) as violating the 1991 ADAAG

22  Standards: Items 1-4, 7-13, 15, 17-20, 22-23, 25-27, 29, 31-35, 37, 39-42, 44, 46-47, 49, 51-52,

23  54, 56-57, 59-60, and 62-66.[4]  *See* Waters Report at 11-38.  That is, 15 barriers (Items 5, 16, 21,

24  24, 30, 36, 38, 43, 45, 48, 50, 53, 55, 58, and 61) are not alleged to violate the 1991 ADAAG

25  Standards.  Remember, Defendants have no obligation to modify (whether that modification is

26

27  _____

28  [4] To be more specific, barriers 5, 6, 16, 24, 30, 38, 45, 50, 55, and 61 are not alleged to violate
    either version of the ADAAG Standards; barriers 21, 36, 43, 48, 53, and 58 alleged to violate only
    the 2010 ADAAG Standards and not the 1991 ADAAG Standards.

1    readily achievable or not) any Item that is not alleged to violate the 1991 ADAAG Standards, even

2    if that Item violates the 2010 ADAAG Standards.  *See* 28 C.F.R. § 36.304(d)(2)(i).  Plaintiffs'

3    motion for summary judgment is therefore DENIED as to the 15 Items not alleged to violate the

4    1991 ADAAG Standards.

5         Plaintiffs' motion for summary judgment is also DENIED as to the two items—Items 18

6    and 32—that are alleged to violate only the 1991 ADAAG Standards and not the 2010 ADAAG

7    Standards.  That is because Plaintiffs have not identified a provision of the 2010 ADAAG

8    Standards with which these Items must comply, if readily achievable.

9         In addition, at the March 19, 2020 hearing, Plaintiffs conceded that a dispute of material

10   fact exists as to whether it is "readily achievable" to remedy Items 12, 13, 15, 19, 21, 22, 23, 24,

11   29, 31, 33, 35, 36, 37, 38, 46, 47, 49, 52, 54, 57, 59, 60, and 63, and that summary judgment is

12   therefore inappropriate.  Based on this concession, the Court DENIES the motion for summary

13   judgment as to these 24 Items.

14        All told, the following 26 Items remain before the Court on Plaintiffs' motion for summary

15   judgment: Items 1-4, 7-11, 17, 20, 25-27, 34, 39-42, 44, 48, 51, 56, 62, 64-66.  They are addressed

16   below.

17            **a.  Exterior Ticket Windows: Items 1-3**

18        Items 1-3 relate to the Exterior Ticket Windows.  As to Items 1 and 2, the Court DENIES

19   Plaintiffs' motion for summary judgment because Plaintiffs have not established that these Items

20   violate the 1991 ADAAG Standards.

21        Item 1 is that the slope of the ground surface at the two ticket windows has a slope of

22   3.8%.  Waters Report at 11.  The Waters Report invokes § 4.5.1 of the 1991 ADAAG Standards.

23   *Id.*  However, that provision does not prescribe a maximum slope; it says only that "[g]round and

24   floor surfaces along accessible routes and in accessible rooms and spaces including floors, walks,

25   ramps, stairs, and curb ramps, shall be stable, firm, slip-resistant, and shall comply with 4.5."

26   1991 ADAAG Standards § 4.5.1.  Plaintiffs have not established a violation of this command.

27        Item 2 is that the transaction counter for the ticket window is "measured at 42" and 43-

28   1/4","" presumably at different points.  Waters Report at 11.  The Waters Report purports to invoke

United States District Court
Northern District of California

a section 112B.5.7.2(2), but no such section appears to exist in the 1991 ADAAG Standards.

On the other hand, the Court GRANTS Plaintiffs' motion for summary judgment as to Item 3. Item 3 is that the intercom call button at the Exterior Ticket Windows is located at a height of 55-1/2" AFF. Waters Report at 11. The Waters Report cites § 4.27 of the 1991 ADAAG Standards, which provides, *inter alia*, that "the highest operable part of controls, dispensers, receptacles, and other operable equipment shall be placed within at least one of the reach ranges specified in 4.2.5 and 4.2.6." 1991 ADAAG Standards § 4.27.3. Plaintiffs appear to invoke § 4.2.6, which mandates a "maximum high side reach" of 54 inches "[i]f the clear floor space allows parallel approach by a person in a wheelchair." 55-1/2" AFF plainly exceeds this maximum, and Defendants do not protest.

Having confirmed that Item 3 violates the 1991 ADAAG Standards, the Court turns to whether remediation is readily achievable. Plaintiffs' Schraibman Report indicates that it would cost $132 to remove the existing intercom and reinstall it at an appropriate height. That shifts the burden to Defendants to bring contrary evidence. Defendants attempt to do so by citing the Fant Declaration, but Mr. Fant says only that "it is not certain that someone could fix" the intercom button "due to electrical issues." Fant Decl. ¶ 12 (cited by Def. Mot. at 11). This vague and conclusory comment is insufficient to create a genuine dispute that moving the intercom may be accomplished "without much difficulty." And again, regarding expense, Defendants have waived any defense based on their financial resources. Thus, the Court finds no genuine dispute of fact that Item 3 is a barrier to accessibility under the 1991 ADAAG Standards and that remediation is readily achievable.

### b. Entry Door: Items 4

The Court GRANTS Plaintiffs' motion for summary judgment as to Item 4, that the height of the threshold at the Entry Door to the Nick is 1-1/4" above the exterior walk surface. Waters Report at 11-12. The Waters Report invokes § 4.13.8 of the 1991 ADAAG Standards, which provides, *inter alia*, that "[t]hresholds at doorways shall not exceed 3/4 in (19 mm) in height for exterior sliding doors or 1/2 in (13 mm) for other types of doors." Defendants do not dispute that 1-1/4" in height exceeds 1/2 inch (and, indeed, 3/4 inch, though there is no evidence that the Entry

United States District Court
Northern District of California

Door is a sliding door).  Having confirmed that Item 4 violates the 1991 ADAAG Standards, the Court turns to whether remediation is readily achievable.  Plaintiffs' Schraibman Report indicates that it would cost $422 to remove and replace the door threshold.  That shifts the burden to Defendants to bring contrary evidence, but Defendants' only such evidence is Mr. Fant's conclusory statement that "[r]emediation of the door threshold at the entry door would also be costly."  There is therefore no genuine dispute of fact that remediation is readily achievable.

### c.  Floor Mats: Items 7 and 8

The Court also GRANTS Plaintiffs' motion for summary judgment as to Items 7 and 8. Item 7 is that "a loose floor mat is provided at the exterior side of the entry door" to the Nick and Item 8 is that "a loose floor mat is provided at the exterior side of the entry door" to the Theatre 1. Waters Report at 12-13.  As the Waters Report indicates, both Items violate the requirement at § 4.5.3 of the 1991 ADAAG Standards that "[e]xposed edges of carpet shall be fastened to floor surfaces."  Defendants have also conceded that remediation of Items 7 and 8 is readily achievable. ECF 72-7 (Fant Depo. at 94:18-19, 114:14-15).  Hence, there remains no genuine dispute of material fact as to these Items.

### d.  Theatre Lobby: Items 9-11

Items 9, 10, and 11 are located in the Theatre Lobby.  The Court DENIES Plaintiffs' motion as to Item 9 and 10 because Plaintiffs have not established that these Items violate the 1991 ADAAG Standards.  Item 9 is that the snack counter is too high, at 39-1/2" AFF; Item 10 is that the remainder of the counter is also too high, at 36" AFF.  Waters Report at 13.  The Waters Report purports to invoke a section 1122B.5.7.2(2) as to both Items, but no such section appears to exist in the 1991 ADAAG Standards.

As for Item 11, that allege barrier is that "the operable part of the water dispenser" in the Theatre Lobby is "more than 46" AFF" and over an obstruction (i.e., the counter) at 36" AFF. Waters Report at 13-14.  Defendants contend that Item 11 is a "temporary obstruction" and as such is not an ADA violation.  *See* Def. Mot. at 15-16 (citing *Chapman v. Pier 1 Imports*, No. CIVS041339LKKCMK, 2006 WL 1686511, at *10 (E.D. Cal. June 19, 2006), *rev'd sub nom. Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011)).  This argument appears to

be based on 28 C.F.R. § 36.211(b), which explains that the ADA's "readily accessible" mandate "does not prohibit isolated or temporary interruptions in service or access *due to maintenance or repairs*." *See Chapman*, 2006 WL 1686511, at *10. But Defendants have cited no evidence that Item 11 is the result of "maintenance or repairs." Furthermore, though the water dispenser may be movable, the record indicates that its position was not "isolated or temporary" but rather a "reoccurring barrier[] to access by patrons in wheelchairs." *Kalani v. Starbucks Coffee Co.*, 698 Fed. App'x 883, 886 (9th Cir. 2017) (rejecting Defendants' argument based on 28 C.F.R. § 36.211(b)). Thus, Defendants have not shown that Item 11 is exempted by 28 C.F.R. § 36.211(b).

At the same time, Plaintiffs have not shown that they are entitled to summary judgment as to Item 11. The only provision of the 1991 ADAAG Standards cited by the Waters Report is § 4.2.4.2, "Relationship of Maneuvering Clearance to Wheelchair Spaces":

> One full unobstructed side of the clear floor or ground space for a wheelchair shall adjoin or overlap an accessible route or adjoin another wheelchair clear floor space. If a clear floor space is located in an alcove or otherwise confined on all or part of three sides, additional maneuvering clearances shall be provided as shown in Fig. 4(d) and (e).

Plaintiffs have not made clear how this requirement is relevant to the position of the water dispenser—much less that it has been violated. The Court therefore DENIES Plaintiffs' motion for summary judgment as to Item 11.

### e. Men's Restroom: Items 17, 20, 25-27

Items 17, 20, 25, 26, and 27 are located in the Men's Restroom.

Item 17 is that the door closing speed is too fast, at 3.46 seconds. Waters Report at 16. The Waters Report indicates that this violates § 4.13.10 of the 1991 ADAAG Standards: "If a door has a closer, then the sweep period of the closer shall be adjusted so that from an open position of 70 degrees, the door will take at least 3 seconds to move to a point 3 in (75 mm) from the latch, measured to the leading edge of the door." Plaintiffs have not established a violation of this requirement (3.46 seconds is not less than 3 seconds), wherefore their motion for summary judgment is DENIED as to Item 17.

United States District Court
Northern District of California

1         Item 20 is that the mirror is mounted too high, with the reflective surface measured at 55-

2   3/4" AFF. Waters Report at 18. The Waters Report indicates that this violates § 4.19.6 of the

3   1991 ADAAG Standards: "Mirrors shall be mounted with the bottom edge of the reflecting

4   surface no higher than 40 in (1015 mm) above the finish floor." As 55-3/4" plainly exceeds 40",

5   the Court agrees that Item 20 violates § 4.19.6. As for the "readily achievable" issue, the

6   Schraibman Report states that repositioning the mirror would cost only $14. Schraibman Report

7   at 7. Defendants dispute this, arguing that "lowering the mirror would impact the sink." Def.

8   Mot. at 12 (citing Fant Decl. ¶ 19). As they provide no explanation or foundation to support this

9   assertion, however, Defendants have not created a genuine dispute of fact. The Court also notes

10  that Defendants have the option of instead "[i]nstalling a full-length bathroom mirror," which is

11  presumptively readily achievable under 28 C.F.R. § 36.304(b)(16) (cited by Pl. Mot. at 22). That

12  option may ultimately be easier than repositioning the existing mirror. Accordingly, Plaintiffs'

13  motion for summary judgment is GRANTED.

14        Item 25 is that "the rear wall grab bar is not positioned correctly in relation to the

15  centerline of the toilet." Waters Report at 20. But Plaintiffs have not pointed the Court to

16  evidence regarding where the rear wall grab bar *is* mounted; as a result, their statement that it is

17  not "positioned correctly" is wholly conclusory. Thus, Plaintiffs have not established a violation

18  of the 1991 ADAAG Standards, wherefore their motion for summary judgment is DENIED.

19        Item 26 is that "[t]he toilet paper dispenser is more than 7" to 9" in front of the toilet."

20  Waters Report at 21. Again, Plaintiffs have failed to specify how far in front of the toilet the toilet

21  paper dispenser *is* mounted; their statement that it is "more than 7" to 9" in front of the toilet" is

22  too vague to establish a violation of 1991 ADAAG Standards. The motion for summary judgment

23  is DENIED.

24        Item 27 is that the coat hook is mounted at 59-3/4" AFF. Waters Report at 22. The Waters

25  Report invokes § 4.2.5 of the 1991 ADAAG Standards, which provides: "If the clear floor space

26  only allows forward approach to an object, the maximum high forward reach allowed shall be 48

27  in (1220 mm)." Item 27 appears to violate this provision by virtue of the fact that 59-3/4" exceeds

28  48 inches. Moreover, Defendants do not dispute that relocating the coat hook—which Mr.

1   Schraibman estimates will cost $14, *see* Schraibman Report at 9—is readily achievable.

2   Accordingly, Plaintiffs' motion for summary judgment is GRANTED.

3   **f.  Women's Restroom: Items 34, 39-42**

4   Items 34, 39, 40, 41, and 41 are located in the Women's Restroom.

5   Item 34 is that the mirror is mounted too high, with the reflective surface measured at 52-

6   1/2" AFF.  Waters Report at 25.  As with Item 20, the Waters Report indicates that this violates

7   § 4.19.6 of the 1991 ADAAG Standards: "Mirrors shall be mounted with the bottom edge of the

8   reflecting surface no higher than 40 in (1015 mm) above the finish floor."  However, as

9   Defendants' point out, there is evidence in the record that the Women's Restroom has a full-length

10  mirror, in addition to the mirror above the sink.  Indeed, Plaintiffs' own expert, Mr. Schraibman,

11  has testified to that effect, *see* ECF 78-3 at 7-8 (Schraibman Depo. at 156-57); the full-length

12  mirror is also visible in photographs taken by Plaintiffs' other expert, Mr. Waters, *see* ECF 76-3 at

13  90 (photographs of Women's Restroom in the Waters Report).  It seems unlikely that Item 34

14  would still be actionable under § 4.19.6 if there is in fact a full-length mirror mounted no higher

15  than 40 inches AFF.  Hence, although Defendants' cite no evidence as to the height at which this

16  full-length mirror is mounted, the evidence they have provided is sufficient to create a genuine

17  dispute of fact as to Item 34.  Plaintiffs' motion for summary judgment is DENIED.

18  Item 39 is that a "rear wall grab bar is not provided" in violation of § 4.17.6 of the 1991

19  ADAAG Standards ("Grab bars complying with the length and positioning shown in Fig. 30(a),

20  (b), (c), and (d) shall be provided.").  Waters Report at 28.  Certainly, the lack of a rear wall grab

21  bar violates § 4.17.6.  Moreover, the Schraibman Report indicates that installing a rear wall grab

22  bar would cost $102, and Defendants do not contest that doing so is "readily achievable."

23  Schraibman Report at 11.  Accordingly, Plaintiffs' motion for summary judgment is GRANTED.

24  Item 40 is that "[t]he toilet paper dispenser is more than 7" to 9" in front of the toilet."

25  Waters Report at 29.  As with Item 26, Plaintiffs have failed to specify how far in front of the

26  toilet the toilet paper dispenser *is* mounted; their statement that it is "more than 7" to 9" in front of

27  the toilet" is too vague to establish a violation of 1991 ADAAG Standards.  The motion for

28  summary judgment is DENIED.

United States District Court
Northern District of California

31

1        Item 41 is that "the coat hook is mounted at 68" AFF."  Waters Report at 29.  Like Item 27,

2   this appears to violate § 4.2.5 of the 1991 ADAAG Standards ("If the clear floor space only allows

3   forward approach to an object, the maximum high forward reach allowed shall be 48 in (1220

4   mm).").  And also as with Item 27, Defendants do not dispute that relocating the coat hook—

5   which Mr. Schraibman estimates will cost $14, *see* Schraibman Report at 11—is readily

6   achievable.  Accordingly, Plaintiffs' motion for summary judgment is GRANTED.

7        Item 42 is that "the top of the outlet at the seat cover dispenser" is mounted at 60" AFF.

8   Waters Report at 30.  The Waters Report says that this violates § 4.23.7 of the 1991 ADAAG

9   Standards, which states, "If controls, dispensers, receptacles, or other equipment are provided,

10  then at least one of each shall be on an accessible route and shall comply with 4.27."  Section 4.27,

11  for its part, requires that "[t]he highest operable part of controls, dispensers, receptacles, and other

12  operable equipment shall be placed within at least one of the reach ranges specified in 4.2.5 and

13  4.2.6."  Although Plaintiffs do not make clear whether § 4.2.5 or § 4.2.6 governs, Item 42 violates

14  both.  Consequently, the Court sees no genuine dispute of material fact that Item 42 violates the

15  1991 ADAAG Standards.  Nor do Defendants' dispute that moving the seat cover dispenser is

16  readily achievable; indeed, the Schraibman Report indicates that doing so would cost $14.

17  Schraibman Report at 11.  The Court therefore GRANTS Plaintiffs' motion.

18           **g.   Theatre 1: Item 44**

19       Item 44 is that the clear opening width of the entry door to Theatre 1 is 27-3/4", which

20  Plaintiffs believe violates § 4.13.5 of the 1991 ADAAG Standards.  Waters Report at 31.  Section

21  4.13.5 states, in relevant part: "Doorways shall have a minimum clear opening of 32 in (815 mm)

22  with the door open 90 degrees, measured between the face of the door and the opposite stop . . . ."

23  There is no genuine dispute that Item 44 does not comply.  Defendants do raise a dispute, though,

24  on the "readily achievable" issue: Defendants claim that the door to Theatre 1 "is in a corner and

25  near a restroom door," so "[t]here is no room to widen it."  Def. Mot. at 13; *see* Fant. Decl. ¶ 21.

26  Plaintiffs' expert Mr. Schraibman addresses this issue by proposing to replace the double entry

27  doors with a "single larger door with width to code" at a cost of $575.  Schraibman Report at 12.

28  Although that is a plausible solution, the Court cannot say that it is readily achievable as a matter

1  of law; a reasonable finder of fact could find that such a significant modification is not required by

2  the ADA.  Plaintiffs' motion for summary judgment is therefore DENIED.

3  ### h.  Door Closing Speed in Theatres 2, 3, 4: Items 51, 56, 62

4  Items 51, 56, and 62 concern the closing speed of the entry doors to Theatres 2, 3, and 4,

5  respectively: Item 51 (Theatre 2) is that the closing speed is 2.10 seconds; Item 56 (Theatre 3) is

6  that the closing speed is 2.33 seconds; Item 62 (Theatre 4) is that the closing speed 2.72 seconds.

7  Plaintiffs say these Items violate § 4.13.10 of the 1991 ADAAG Standards ("If a door has a closer,

8  then the sweep period of the closer shall be adjusted so that from an open position of 70 degrees,

9  the door will take at least 3 seconds to move to a point 3 in (75 mm) from the latch, measured to

10  the leading edge of the door."), and the Court sees no genuine dispute that they are correct.  In

11  addition, Defendants have conceded that remediation of these Items by adjusting the closer is

12  readily achievable.  ECF 72-7 (Fant Depo. at 95:9-15, 114:14-15).  Accordingly, Plaintiffs'

13  motion for summary judgment under the ADA is GRANTED as to Items 51, 56, and 62.

14  ### i.  Exterior Entry Court: Items 64-66

15  Items 64, 65, and 66 are in the Exterior Entry Court.  Item 64 is that "[t]he entry court is

16  not accessible; barriers include excessive slopes and changes in level."  Waters Report at 37.

17  Plaintiffs cite two provisions of the 1991 ADAAG Standards.  The first, § 4.1.3(2) ("All objects

18  that overhang or protrude into circulation paths shall comply with 4.4."), does not appear to be

19  relevant, as Item 64 does not describe any overhanging or protruding objects.  That leaves

20  § 4.3.2(2), which states: "At least one accessible route shall connect accessible buildings,

21  facilities, elements, and spaces that are on the same site."  Although § 4.3.2(2) is relevant, the

22  Court cannot find, as a matter of law, that it has been violated.  The description in the Waters

23  Report is too conclusory, and Plaintiffs have not pointed the Court to any other evidence

24  documenting the conditions constituting Item 64.  Plaintiffs' motion is DENIED as to Item 64.

25  Item 65 is that the cross slope "exceeds 1:48 at multiple locations throughout the entry

26  court."  Waters Report at 37.  Plaintiffs cite § 4.3.7 of the 1991 ADAAG Standards: "An

27  accessible route with a running slope greater than 1:20 is a ramp and shall comply with 4.8.

28  Nowhere shall the cross slope of an accessible route exceed 1:50."  Again, however, Plaintiffs

have not produced sufficient evidence to merit summary judgment, as the description of Item 65 in the Waters Report too conclusory.  Moreover, § 4.3.7 sets a limit of 1:50 on the cross slope; thus, a cross slope that exceeds 1:48 does not necessarily violate § 4.3.7.  Plaintiffs' motion is DENIED as to Item 65.

Item 66 is that "[t]he change in level is greater than 1/4″ vertical" between "concrete sections where the form boards are not at the same elevation as the concrete."  Waters Report at 38.  Plaintiffs direct the Court to § 4.5.2 of the 1991 ADAAG Standards, which states:

> Changes in level up to 1/4 in (6 mm) may be vertical and without edge treatment (see Fig. 7(c)). Changes in level between 1/4 in and 1/2 in (6 mm and 13 mm) shall be beveled with a slope no greater than 1:2 (see Fig. 7(d)). Changes in level greater than 1/2 in (13 mm) shall be accomplished by means of a ramp that complies with 4.7 or 4.8.

Plaintiffs' do not indicate whether the changes in level at issue have been beveled, or whether they 1/2″ (and hence must be accomplished by means of a ramp).  As a result, they have not established a violation of § 4.5.2 and the Court must DENY summary judgment.

### iv.    Summary

Defendants' motion for summary judgment is DENIED in full.  The Court summarizes its above rulings on Plaintiffs' motion for summary judgment as to their claims under the federal ADA, *see* FAC ¶¶ 46-55, as follows:

| Barrier (Item No.) | Ruling |
|---|---|
| 6, 14, 28 | Dismissed for lack of standing, *see supra* Part IV.A |
| 1, 2, 5, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 43, 44, 45, 46, 47, 48, 49, 50, 52, 53, 54, 55, 57, 58, 59, 60, 61, 63, 64, 65, 66 | Plaintiffs' motion is DENIED. |
| 3, 4, 7, 8, 20, 27, 39, 41, 42, 51, 56, 62 | Plaintiffs' motion is GRANTED. |

### E.    Claims under the California Health and Safety Code

Next, the FAC alleges state law claims arising under the California Health and Safety Code, §§ 19955 *et seq.  See* FAC ¶¶ 10-28.  The California Health and Safety Code requires public accommodations constructed with private funds to conform to the accessibility requirements in

United States District Court
Northern District of California

1    Chapter 7 of the California Government Code, §§ 4450 *et seq.*  Cal. Health & Safety Code

2    § 19956; *see Yates v. Bacco*, No. C-11-01573 DMR, 2014 WL 1089101, at *14 (N.D. Cal. Mar.

3    17, 2014).  As originally enacted in 1968, the California Government Code adopted by

4    incorporation the accessibility standards set forth by the American Standards Associations

5    Specifications A117.1/1961 (the "1961 ASA Standards").  Cal. Gov. Code § 4450 (1968)

6    (available at ECF 75-1[5]); *see generally People ex rel. Deukmejian v. CHE, Inc.*, 150 Cal. App. 3d

7    123, 133 (Ct. App. 1983).  The 1961 ASA Standards were temporary standards, serving as a

8    stopgap until regulations could be developed.  *See CHE, Inc.*, 150 Cal. App. 3d at 131.

9    Accordingly, they were replaced by the California Building Code, Cal. Code Reg., tit. 24, in 1981.

10   *See id.* at 134; Cal. Gov. Code § 4452.  The applicable standards—whether the 1961 ASA

11   Standards or some version of the California Building Code—are those "in effect on the date of an

12   application for a building permit" or, if no permit is required, on the date construction is

13   commenced.  Cal. Gov. Code § 4451(c); *see Rodriguez*, 10 F. Supp. 3d at 1088.

14       As relevant here, however, that mandate applies only to public accommodations

15   constructed or altered on or after July 1, 1970.  *See* Cal. Health & Safety Code §§ 19956, 19959.

16   To be precise, as to public accommodations constructed before July 1, 1970 but altered after July

17   1, 1970, the relevant provisions cover only "the area of specific alteration, structural repair or

18   addition and shall not be construed to mean that the entire building or facility is subject to this

19   chapter."  *Id.* § 19959; Cal. Gov. Code § 4456 (same limitation).  "Any person who is aggrieved or

20   potentially aggrieved by a violation of . . . Part 5.5 (commencing with Section 19955) of Division

21   13 of the Health and Safety Code may bring an action to enjoin the violation."  Cal. Health &

22   Safety Code § 19953.

23       Beginning with common ground, there is no dispute that the Nick is a public

24   accommodation within the meaning of the California Health and Safety Code.  The parties also

25

26   [5] Pursuant to Federal Rule of Evidence 201, and upon Plaintiffs' unopposed request, the Court
     takes judicial notice of the version of Cal. Gov. Code § 4450 adopted in 1968.  *See* ECF 75 at 1-2
27   (request for judicial notice); ECF 75-1 (copy of statute).  Legislative history, including prior
     versions of statutes, *see, e.g.*, *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 891 (N.D.
28   Cal. 2010), is "properly a subject of judicial notice."  *Anderson v. Holder*, 673 F.3d 1089, 1094
     n.1 (9th Cir. 2012).

United States District Court
Northern District of California

1   agree that the Nick was constructed in 1969—i.e., prior to 1970.  Accordingly, the California

2   Health and Safety Code applies only if the Nick has been altered (or repaired or additions have

3   been made) after 1970 and only to the "area of specific alteration."  *Id.* § 19959; California

4   Government Code § 4456.  Defendants move for summary judgment on the grounds that (1)

5   Plaintiffs have not established that the Nick was altered, and (2) even if it was, the alleged barriers

6   are not within the "area of specific alteration."; Defendants also contend that (3) the statute of

7   limitations has run, (4) they cannot be held liable for any violations committed by prior owners,

8   and (5) they relied upon exemptions by local building officials.  Plaintiffs, meanwhile, oppose

9   Defendants' motion on each of these grounds and make their own motion for summary judgment.

10  The Court rules on both parties' motions below.

11                  **i.    Existence of Post-1970 Alterations**

12          First, the Court finds that Plaintiffs have met their burden of showing alterations to the

13  Nick after 1970, triggering the obligations of California Health and Safety Code §§ 19956 *et seq*.

14  Plaintiffs have brought evidence that the Nick was altered at least twice, once in 1975 to 1976 and

15  once in 1981.  According to records subpoenaed from the Santa Cruz Building Department, an

16  additional screen—identified as Theatre 2 in the FAC and the Waters Report, *see* ECF 73-4—and

17  a new foyer were constructed in 1975-76.  *See* Pl. Mot. at 3, 14-15; ECF 73 ("Waters Decl.") ¶¶ 9-

18  14; Clefton Decl. ¶ 5; ECF 72-4 (building records re 1975-76 alteration).  Citing the same records,

19  Plaintiffs say two more screens—identified as Theatres 3 and 4 in the FAC and the Waters Report,

20  *see* ECF 73-4—were added in 1981.  *See* Pl. Mot. at 3, 14-15; Waters Decl. ¶¶ 15-19; Clefton

21  Decl. ¶ 5; ECF 72-5 (building records re 1981 alteration).  Plaintiffs do not point to any alterations

22  to the original screen (Theatre 1) or the restrooms, which were part of the Nick when it was first

23  constructed.[6]  *See* ECF 73-4.

24          Defendants have not brought any evidence to the contrary, but they object that these

25  building records are inadmissible hearsay.  Def. Opp. to Pl. Mot. at 7.  The Court rejects this

26

27  _____

28  [6] Plaintiffs do not describe the alterations to the Nick in 1975-76 and 1981 with much detail in
    their briefing or in Mr. Waters's Declaration.  The Court has not endeavored to discern any
    alterations not identified by the parties.

objection. It is well-established that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). The Court is satisfied that Plaintiffs would be able to introduce the Santa Cruz Building Department records at trial, such as through the hearsay exceptions for public records and for records of a regularly conducted activity, *see* Fed. R. Evid. 803(6), 803(8). The Court therefore finds no genuine dispute that the Nick was altered, as Plaintiffs say, in 1975-76 and 1981.

### ii. Scope of Accessibility Obligation

Second, Defendants argue that even if the Nick was so altered, the California Health and Safety Code is clear that those alterations do not make "the entire building or facility" subject to California Government Code §§ 4450 *et seq.*—only "the area of specific alteration." Def. Opp. to Pl. Mot. at 9-10 (quoting Cal. Health & Safety Code § 19959). In Defendants' view, the California Government Code's accessibility requirements "do not apply outside of any area of the [Nick] that was not altered." Def. Mot. at 18; *see also* Def. Opp. to Pl. Mot. at 8-10. Because "the restrooms and paths of travel were not altered" in 1975-76 or 1981, the argument goes, they need not comply with California Government Code §§ 4450 *et seq.* Def. Opp. to Pl. Mot. at 10; *see also id.* at 16 (objecting that "Plaintiffs' evidence does not establish if these specific elements were altered as part of the additions in the 1970s.").

At the outset, the Court emphasizes that Defendants do not make this argument as to barriers within Theatres 2-4 or the new foyer, as those areas were specifically altered. Hence, Items 48-63 in Theatres 2-4 are not exempt from compliance with California Government Code §§ 4450 *et seq.* The same is true for any barriers in the new foyer, though it is not clear whether there are any.

As to the remaining barriers, Plaintiffs disagree that all such barriers are exempt simply because they were not in an altered area. They contend that the California Health and Safety Code's requirement that "the specific area of alteration" comply with California Government Code §§ 4450 *et seq.* means that both the area that was altered and "key areas" serving the altered area

United States District Court
Northern District of California

1   must be made accessible.  Pl. Mot. at 10; *see also* ECF 82 ("Pl. Reply") at 5; Pl. Opp. to Def. Mot.

2   at 5-7.

3           Plaintiffs assert that the California Courts of Appeal have sided with them on this issue in

4   *People ex rel. Deukmejian v. CHE, Inc.*, 150 Cal. App. 3d at 131-34, and other cases.  *See* Pl.

5   Reply at 5 (citing various cases).  The Court disagrees: *CHE, Inc.* did not involve post-1970

6   alterations to a pre-existing construction, but rather a new construction, *see* 150 Cal. App. 3d at

7   128-29; the other cited cases are likewise not on point.  Nevertheless, the Court believes Plaintiffs

8   correctly interpret the relevant provisions, for three reasons.  First, the plain language of California

9   Government Code § 4450 provides that covered facilities "shall be accessible to and usable by

10  persons with disabilities."  Cal. Gov. Code § 4450(a); *see also Vogel v. Dolanotto, LLC*, No.

11  216CV02488ODWKSX, 2018 WL 851304, at *6 (C.D. Cal. Feb. 13, 2018).  In other words, an

12  altered area must "be accessible to and usable by persons with disabilities" in order to comply with

13  the California Government Code, and the elimination of barriers outside of the altered area may be

14  necessary to accomplish that.

15          This commonsense logic is reflected in a 1979 opinion letter from the California Office of

16  Legislative Counsel, ECF 75-14, of which the Court takes judicial notice.  *See* ECF 75 ¶ 14

17  (request for judicial notice); *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 238 F. Supp. 2d 1158,

18  1165 n.5 (N.D. Cal. 2002) (taking judicial notice of opinions of the Legislative Counsel).

19  Although opinions by the Legislative Counsel are not binding, they are entitled to "due

20  deference," to the extent they are persuasive.  *Grupe Dev. Co. v. Superior Court*, 4 Cal. 4th 911,

21  922 (1993).  The 1979 opinion letter provides the following view:

22              When a public building or facility that was constructed prior to
                November 13, 1968, is structurally remodeled after March 4, 1972,
23              Section 4456 of the Government Code requires that a path of travel
                from the exterior of the structure to the remodeled area, a path of
24              travel from any key facilities serving the remodeled area to the
                remodeled area . . . , and the key facilities themselves be accessible to
25              the physically handicapped to the same extent that the remodeled
                areas of the structure are to be accessible by the physically
26              handicapped.

27  ECF 75-14 at 3.  The opinion letter goes on to explain that the limitation in California Government

28  Code § 4456 (and California Health and Safety Code § 19959) "requir[ing] only the providing of

38

accessibility . . . to that portion of the public building or facility constructed prior to November 13, 1968, which is altered, repaired, or added" nevertheless requires that "paths of travel and key facilities serving the remodeled area" be accessible. *Id.* at 6. Otherwise, the "portion of the structure which is remodeled would not be functionally usable by the physically handicapped" and the legislative purpose "provided for in Section 4450" would not be fulfilled. *Id.* This analysis is consistent with and supports this Court's reading of California Government Code § 4450.

The Court's holding is further supported by the 1981 version of the California Building Code, 24 Cal. Code. Reg. § 2-105(b)(11)(A)(5) (available at ECF 75-5). That regulation states that compliance with the mandate that the "area of specific alteration" be made accessible requires

> (a) That a primary entrance to the building or facility and the primary path of travel to the specific area shall be accessible to and usable by handicapped persons
>
> (b) That sanitary facilities, drinking fountains and public telephones serving the remodeled area shall be accessible to and usable by handicapped persons.

In other words, the California Building Code specifically provides that certain building elements beyond the area of specific alteration must be made accessible. To be clear, the California Building Code was not effective until December 31, 1981, and hence does not govern the 1975-76 and 1981 alterations. *See CHE, Inc.*, 150 Cal. App. 3d at 134; Cal. Gov. Code § 4451(c). However, California courts have relied upon the 1981 version of the California Building Code in interpreting the then-existing statutory scheme under California Government Code §§ 4450 *et seq.* because it "merely clarifie[d] the existing law." *CHE, Inc.*, 150 Cal. App. 3d at 134. Here, 24 Cal. Code. Reg. § 2-105(b)(11)(A)(5) (1981) gives credence to the Court's view that the California Government Code requires the removal of barriers beyond those in the area of specific alteration when an alteration is made.

For these reasons, the Court holds that pursuant to the California Health and Safety Code § 19959, barriers must be remedied if they affect building elements that are necessary to the accessibility and use of the areas of alteration; those barriers may be outside of the altered areas themselves. The question then becomes which elements of the Nick qualify as necessary to the accessibility and use of the areas altered in 1975-76 and 1981. Plaintiffs believe the (1) the front

entrance, (2) the restrooms, and (3) the paths of travel connecting the front entrance and the restrooms to the new screens constitute these necessary elements. Pl. Mot. at 15; *see also* Pl. Opp. to Def. Mot. at 8. The Court agrees. Without an accessible entrance and restrooms, it cannot be said that the new screens are "accessible to and usable by persons with disabilities." Cal. Gov. Code § 4450. And though not retroactively binding, the 1981 California Building Code's explicit requirement that the "primary entrance" and "sanitary facilities" be accessible lends credence to this view. *See* 24 Cal. Code. Reg. § 2-105(b)(11)(A)(5).

In sum, the Court finds that the 1975-76 and 1981 alterations to the Nick required Theatres 2-4, the new foyer, the front entrance, the restrooms, and paths of travel connecting the front entrance and the restrooms to Theatres 2-4 to be made accessible under California Government Code §§ 4450 *et seq.* On the other hand, Defendants are entitled to summary judgment on the California Health and Safety Code claims as to barriers outside of these areas; such barriers are exempt under California Health and Safety Code § 19959. Defendants' motion for summary judgment is therefore GRANTED as to barriers identified in the FAC in the following locations: the "Exterior Ticket Windows," the "Theatre Lobby," and "Theatre One." FAC ¶¶ 19 (Items 1-3, 8-11, 43-47).

### iii.    Statute of Limitations

Having found that alterations triggered an obligation to make elements of the Nick accessible in the 1970s and 80s, the Court turns to Defendants' argument that Plaintiffs' request for injunctive relief for these alleged violations is time-barred by the applicable statute of limitations. *See* Def. Mot. at 20; Def. Opp. to Pl. Mot. at 14-16. Though they do not make it plain, Defendants apparently believe that the three-year limitations period under California Civil Code 338(a) applies to Plaintiffs' claims under the California Health and Safety Code. *See* Def. Mot. at 20; Def. Opp. to Pl. Mot. at 15. In Defendants' view, that period began to run when the facility was original constructed or altered "without complying with the then-existing accessibility regulations"; a "later denial of access is a 'continuing effect' of the original violation and not a 'continuing violation' which would toll the statute of limitations." Def. Mot. at 20; Def. Opp. to Pl. Mot. at 15. Thus, the argument goes, the "statute of limitations expired over thirty years ago."

40

Def. Mot. at 20; Def. Opp. to Pl. Mot. at 15.

The Court assumes without deciding that the statute of limitations is provided by California Civil Code § 338(a), which Plaintiffs do not contest.[7] The Court nonetheless agrees with Plaintiffs that the three-year limitations period has not run as to Plaintiffs' claims. Under California law, the limitations period begins to run when "the cause of action shall have accrued." Cal. Civ. Code § 312. "The general rule for defining accrual of a cause of action sets the date as the time, when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (internal quotation marks and citations omitted). However, where the duty that was allegedly breached is "a continuing one, susceptible to recurring breaches," a more specific rule applies: the continuous accrual doctrine. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198-1200 (2013). Under this doctrine, "each alleged breach" of a continuing obligation is a separate "wrongful act" triggering its own limitations period. *Id.* at 1199.

In other words, the cause of actions at hand did not accrue in the 1970s and 80s when the Nick was altered. That is because, as Plaintiffs argue, the Defendants' obligation to make the Nick accessible was a continuing one. *Cf. Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002) (finding that "so long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues" and can give rise to a cause of action under the ADA). Thus, a new cause of action accrued each time the Plaintiffs visited the Nick in 2016 and were injured by the barriers to accessibility. Because it is undisputed that Plaintiffs filed suit within a year of those visits, *see* ECF 1 (Complaint filed on November 23, 2016), the Court finds that the instant suit is timely. Defendants' motion for summary judgment based on the statute of limitations is DENIED.

### iv.     Liability for "Acts of Prior Owners"

---

[7] Neither the Ninth Circuit nor the California Supreme Court has denoted the applicable statute of limitations for suits alleging disability discrimination in public accommodations. Still, the Ninth Circuit's decision in *Sharkey v. O'Neal*, 778 F.3d 767 (9th Cir. 2015), suggests the Court's present assumption is correct. *Id.* at 773 (holding that Civil Code § 338 would apply to accessibility claims under California Government Code § 11135 and, consequently, Title II of the ADA).

United States District Court
Northern District of California

1      Defendants' next argument is that because they were not involved "in the design and

2   construction of the [Nick] as it was originally constructed or how it was allegedly modified," they

3   cannot be held liable for the "acts of prior owners." Def. Opp. to Pl. Mot. at 11-12. Put another

4   way, Defendants reject the proposition that when they purchased the Nick in 2015, they

5   "assume[d] liability" for the "flaws in its design and construction." *Id.* at 12. Plaintiffs, of course,

6   disagree: They say that a current owner is liable for current access deficiencies, even if those

7   deficiencies were "caused by the failure of its predecessors in interest to conform to access laws at

8   the time of the alterations." Pl. Mot. at 18.

9      The Ninth Circuit has not weighed in on this question, nor have many district courts.

10   Nonetheless, as Plaintiffs point out, a court in this district has adopted Plaintiffs' position. *See*

11   *Hodges v. El Torito Restaurants, Inc.*, No. C-96-2242 VRW, 1998 WL 95398, at *4 (N.D. Cal.

12   Feb. 23, 1998); *Stickney v. McDonald's Corp., Inc.*, No. C-99-0558-VRW, 2000 WL 36743464, at

13   *3 (N.D. Cal. Jan. 24, 2000) (affirming the court's earlier decision in *Hodges*); *see also Rodriguez*,

14   10 F. Supp. 3d. at 1088 (citing *Hodges* favorably). Meanwhile, the only case Defendants cite in

15   support of their position is *Paulick v. Ritz-Carlton Hotel Co., LLC*, No. C 10-01115 CRB, 2011

16   WL 6141015, at *5 (N.D. Cal. Dec. 9, 2011). That case construed the text of 42 U.S.C. § 12183, a

17   provision of the ADA not at issue in this case.[8] As a result, *Paulick* is neither relevant nor

18   instructive.

19      This Court agrees with the *Hodges* court. Defendants cite no statute or regulation

20   absolving a successor in interest of liability. In the absence of any such authority, the Court

21   cannot craft a limiting rule out of whole cloth. Moreover, the Court is unpersuaded by the

22   Defendants' argument that imposing liability here would be "a severe and unequitable punishment

23   for an entity that did not play any role in the alleged discriminatory act." Def. Opp. to Pl. Mot. at

24   14. The accessibility laws of California are not concerned with "punishing" one entity or another;

25   their aim is simply to make public accommodations accessible to and usable by persons with

27   _____

28   [8] As discussed in Part IV.D., Plaintiffs ADA claims are brought under the "readily achievable" provisions and not the "new construction" or "alteration" provisions, of which 42 U.S.C. § 12183 is one.

United States District Court
Northern District of California

1  disabilities.  As the *Hodges* Court recognized, the only way to effectuate that aim is to hold the

2  current owners of buildings liable for pre-existing violations.  1998 WL 95398, at *4.  Persons

3  with disabilities should not be indefinitely denied access to a facility simply because ownership

4  has changed hands.

5      Besides, the result here is not unfair.  It was Defendants' responsibility at the time of

6  purchase to investigate whether the Nick was "saddled with extant access obligations" that would

7  affect its value.  *Rodriguez*, 10 F. Supp. 3d. at 1088; *see also Hodges*, 1998 WL 95398 at *4 ("El

8  Torito had the opportunity to address these issues when it purchased the building.").  After all,

9  "companies assume the liabilities of other companies they acquire and land buyers assume

10  responsibility for hazards on the real estate they purchase."  *Hodges*, 1998 WL 95398 at *4.  And

11  to the extent the seller failed to disclose certain information or facilitate Defendants' investigation,

12  Defendants may have a claim against the seller.  *Accord id.* ("Of course, if El Torito did not have

13  constructive notice of the violations, it can seek redress from El Caballo.").  Finally, and as

14  discussed in the next section, California Health and Safety Code § 19957 authorizes local building

15  departments to grant exemptions from literal compliance "in cases of practical difficulty,

16  unnecessary hardship, or extreme difference."  Defendants apparently did not seek any such

17  exemption.

18      Accordingly, the Court DENIES Defendants' motion for summary judgment on the ground

19  that they were not involved in the design or construction of the alterations.

20          **v.    Reliance on Local Building Officials**

21      Defendants separately argue that, even if a purchaser of a property may generally be liable

22  for preexisting access violations, they should be exempted here based on their "good faith reliance

23  upon the City of Santa Cruz building officials."  Def. Mot. at 19.  As just noted, a local building

24  department may exempt a facility from full compliance with the accessibility requirements at

25  California Government Code §§ 4450 *et seq.* "in cases of practical difficulty, unnecessary

26  hardship, or extreme difference."  Cal. Health & Safety Code § 19957.  Defendants do not,

27  however, claim that the Santa Cruz Building Department granted a formal exception pursuant to

28  California Health and Safety Code § 19957.  Rather, they ask this Court to "infer that the issuance

United States District Court
Northern District of California

of certificates of occupancy by the local building officials . . . indicates that such officials either determined that the Theater complied with applicable requirements or determined that some type of exemption warranted some deviation from them." Def. Mot. at 19.

As an initial matter, it is not clear that a "good faith reliance" defense applies where there has been no application for an exemption under § 19957. *See generally Rodriguez v. Barrita, Inc.*, 62 F. Supp. 3d 936, 939-940 (N.D. Cal. 2014) (describing the hardship application process and requirements). Indeed, Defendants cite no case actually applying the defense under such circumstances, whether based upon a "certificate of occupancy" or otherwise. *See D'Lil v. Stardust Vacation Club*, No. CIV-S-00-1496DFL PAN, 2001 WL 1825832, at *8 (E.D. Cal. Dec. 21, 2001) (finding the defendant's reliance upon a building department's opinion letter unreasonable); *Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 180 (Cal. Ct. App. 1990) (noting "the possibility that in some instances denial of access under the statute may be excused, e.g., where the violator has been affirmatively directed, or given formal approval, by an enforcing agency" but finding no excuse).

Even assuming the defense could be grounded in a certificate of occupancy, Defendants have not shown they are entitled to it here. First of all, Defendants have not actually proffered the certificate of occupancy. The only evidence of its existence and of Defendants' reliance upon it is a single paragraph in the Fant Declaration:

> Landmark relied upon the fact that the City of Santa Cruz had issued all appropriate business licenses and permits, such as a certificate of occupancy, to allow the Theater to be open to the public . . . when it chose to acquire the Theater.

Fant Decl. ¶ 4 (cited at Def. Mot. at 19). This passing reference to "a certificate of occupancy" is insufficient "to factually show the basis upon which the [] certificate of occupancy issued." *CHE, Inc.*, 150 Cal. App. 3d at 137. Without any evidence as to why the Santa Cruz Building Department issued the alleged certificate of occupancy, there is a triable issue of fact as to whether the officials "determined that the Theater complied with applicable requirements or determined that some type of exemption warranted some deviation from them." *See id.*

The Fant Declaration is likewise insufficient to establish Defendants had knowledge of and

44

actually relied upon any specific exemption or finding of compliance by the Santa Cruz Building Department.  At most, the Fant Declaration shows that Defendants relied upon the fact that the Nick was allowed to remain "open to the public."  *See Rodriguez*, 10 F. Supp. 3d at 1089 (rejecting Defendants' reliance argument "premised on the fact that from 1986 to 1998, when La Victoria opened, the Department continually permitted prior occupants to operate several different restaurants within the building").  And to the extent Defendants assumed that the Nick therefore must have been exempt or compliant, that assumption was not reasonable.

Thus, Defendants have offered no evidentiary basis for concluding that they were "affirmatively directed, or given formal approval, by an enforcing agency to construct premises in a certain way, or maintain a configuration, which does not comply with the code requirements."  Def. Mot. at 19 (quoting *Cafe Royale, Inc.*, 218 Cal. App. 3d at 180).  Defendants' motion for summary judgment is DENIED.

### vi.   Alleged Violations of the ASA Standards

At last, the Court comes to the alleged violations of applicable accessibility standards in the above-described areas of the Nick.  First, as to the applicable accessibility standards, Plaintiffs assert and Defendants do not dispute that the 1961 ASA Standards (which were in effect until they were replaced by the California Building Code on December 31, 1981) govern the alleged barriers in this case.[9]  Plaintiffs claim that Items 3, 4, 12, 15, 18, 20, 21, 22, 27, 29, 32, 34, 35, 41, 42, 44, 46, 49, 54, 57, 59, 60, 64, 66 are barriers to accessibility under the 1961 ASA Standards.[10]  *See* Pl. Mot. at 15-16; *see also* Pl. Reply at 9-11.  Defendants contest certain of these barriers.  *See* Def. Opp. to Pl. Mot. at 17-21.  The Court considers each of the 24 Items in turn below.

### a.   Items 3, 27, and 41

The Court has already held that Item 3 is not within the scope of Defendants' obligations

---

[9] Pursuant to Federal Rule of Evidence 201, and upon Plaintiffs' unopposed request, the Court takes judicial notice of the 1961 ASA Standards.  *See* ECF 75 at 2 (request for judicial notice); ECF 75-4 (copy of statute).  As already stated, prior versions of statutes are properly subject to judicial review.  *See Multiven, Inc.*, 725 F. Supp. 2d at 891.

[10] As with the federal ADA claims, Plaintiffs provide no comprehensive list of the alleged violations of the 1961 ASA Standards in their briefing; the Court has cobbled this list together from various places in the briefs and the Waters Report.  The Court includes in this list barriers as to which the Court granted summary judgment in Defendants' favor in Part IV.E.ii.

under California Health and Safety Code § 19959.  *See supra* Part IV.E.ii.  In addition, the Court finds that Item 3 is not actionable under the 1961 ASA Standards.  Item 3 is that the intercom call button at the Exterior Ticket Windows is located 55-1/2" AFF, which Plaintiffs say violates §§ 3.3.3 and 3.3.4 of the 1961 ASA Standards.  Waters Report at 11.  As Defendants point out, however, these provisions do not appear to prescribe the appropriate height of an intercom or any other device.  Rather, they lay out the typical "bilateral horizontal reach" range (§ 3.3.3) and "diagonal reach range" (§ 3.3.4) for "[t]he Adult Individual Functioning in a Wheelchair"; indeed, they are part of a section entitled "General Principles and Considerations."  ECF 75-4 at 7.  The Court does not see how Defendants could violate these purely descriptive provisions.  Plaintiffs, for their part, do not respond to this argument.  Accordingly, the Court GRANTS summary judgment for Defendants as to Item 3 on this additional ground.

Plaintiffs' claims as to Items 27 and 41 fail for the same reason.  *See* Def. Opp. to Pl. Mot. at 20.  These items are that the coat hook in the Men's Restroom (Item 27) and Women's Restroom (Item 41) are mounted too high, at 59-3/4" and 68", respectively.  Waters Report at 22, 29.  Because the only provision of the 1961 ASA Standards these Items allegedly violate is § 3.3.4, *id.*, the Court GRANTS Defendants' motion for summary judgment.

### b.  Item 4

Item 4 is that the threshold of the Entry Door is approximately 1-1/4" above the exterior walk surface, which Plaintiffs say violates § 5.3.3 of the 1961 ASA Standards.  Waters Report at 12; Pl. Reply at 10.  That provision states: "Sharp inclines and abrupt changes in level shall be avoided at doorsills.  As much as possible, threshold shall be flush with the floor."  ECF 75-4 at 9.  In other words, § 5.3.3 of the 1961 ASA Standards does not prescribe a maximum threshold height.

Plaintiffs respond by citing to the 1981 California Building Code, which they say provides that "abrupt changes in level shall not exceed 1/4 of [an] inch."  Pl. Reply at 10 (citing 24 Cal. Code Reg. § 11B-404.2.5 (1981)).  But of course, the California Building Code does not retroactively govern this case.  It is true that the Court looked to the 1981 California Building Code to aid in interpreting terms in the California Government Code and the California Health and

46

1    Safety Code—statutes for which the California Building Code serves as implementing regulations.

2    The Court will not, however, import specific technical requirements from the California Building

3    Code into the 1961 ASA Standards.  Hence, though any threshold higher than 1/4" may violate the

4    1981 California Building, it does not necessarily violate the 1961 ASA Standards.

5            Because the only evidence Plaintiffs offer is their measurement of the threshold, the Court

6    does not believe they have established a violation of § 5.3.3.  At the same time, the Court is not

7    prepared to say that Defendants have negated the possibility of liability at trial.  Both parties'

8    motions are therefore DENIED.

9                            **c.  Item 12**

10           Item 12 is that the route from the building entrance to Theatre 1 and to the restrooms has

11   too great a slope: that is, the slope "measures up to 16.7% and cross slope up to 12.2%."  Waters

12   Report at 14; Pl. Reply at 10.  Plaintiffs maintain that this contravenes §§ 1.2 and 5.1.1 of the 1961

13   ASA Standards.  Waters Report at 12; Pl. Reply at 10.  Defendants are quite right that § 1.2 is of

14   no aid to Plaintiffs, as it simply states the purpose of the 1961 ASA Standards.  Def. Opp. to Pl.

15   Mot at 18; *see* ECF 75-4 at 6.  Plaintiffs' appeal to § 5.1.1 fares better.  That provision, which

16   states that "[a] ramp shall not have a slope greater than 1 foot rise in 12 feet, or 8.33 percent, or 4

17   degrees 50 minutes," ECF 75-4 at 8, does appear to be violated by Item 12.  The problem,

18   however, is that Plaintiffs refer to § 5.1.1 for the first time in their Reply; they rely upon § 1.2

19   alone in all their previous filings, including the Waters Report.  Because Defendants have not had

20   an opportunity to respond, the Court is unwilling to grant summary judgment in Plaintiffs' favor

21   on this issue.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000)

22   ("[I]ssues cannot be raised for the first time in a reply brief."); *Bernard v. Donat*, No. 11-cv-

23   03414-RMW, 2012 WL 10138, at *3 (N.D. Cal. Jan. 2, 2012)) ("[C]onsideration of arguments

24   raised for the first time on reply would prejudice plaintiff if he is not given an opportunity to

25   respond.").  The Court must therefore deny both parties' motions.

26                          **d.  Items 15 and 29**

27           Item 15 is that the maneuvering space on the pull side of the entry door to the Men's

28   Restroom measures only 8-1/4" beyond the strike side jamb.  Waters Report at 15; Pl. Reply at 10.

United States District Court
Northern District of California

According to Plaintiffs, this violates the requirement at § 5.3.2 of the 1961 ASA Standards that "the floor on the inside and outside of each doorway . . . shall extend 1 foot beyond each side of the door," ECF 75-4 at 9. *See* Waters Report at 15; Pl. Reply at 10. The Court has already rejected Defendants' sole argument in response, i.e., that this area "was indisputably not altered" and that the regulation thus "does not apply." Def. Opp. to Pl. Mot. at 18. There is no dispute of material fact that Item 15 violates § 5.3.2 of the 1961 ASA Standards, wherefore Plaintiffs' motion is GRANTED.

Item 29 is also alleged to violate § 5.3.2. Item 29 is that the maneuvering space on the pull side of the entry door to the Women's Restroom is approximately 30" "measured perpendicular to the door in the closed position." Waters Report at 23. Although Defendants do not address Item 29 in their Opposition or their own motion for summary judgment, the Court finds that Plaintiffs have not established a violation of § 5.3.2. It is not clear how to overlay the 30" measurement taken by Mr. Waters onto the distance discussed in the standard. Moreover, assuming they correspond to the same distance, 30" exceeds the 1 foot minimum under § 5.3.2. Under these circumstances, Plaintiffs' have not met their burden of showing that § 5.3.2 has been violated; the Court DENIES their motion for summary judgment. Because Defendants have not clearly shown that the distance measured in Item 29 corresponds to the 1 foot requirement in § 5.3.2, however, the Court does not grant summary judgment for Defendants.

### e.   Items 18 and 32

Items 18 and 32 are that the clearance to the front apron of the lavatory is 27-1/2" AFF in both the Men's Restroom (Item 18) and Women's Restroom (Item 32). Waters Report at 17, 24; Pl. Reply at 10-11. Plaintiffs say these items violate § 5.6.3 of the 1961 ASA Standards. Waters Report at 17; Pl. Reply at 10-11. Section 5.6.3 states:

> Toilet rooms shall have lavatories with narrow aprons, which when mounted at standard height are usable by individuals in wheelchairs; or shall have lavatories mounted higher, when particular designs demand, so that they are usable by individuals in wheelchairs.

ECF 75-4 at 10. Defendants argue that "[n]othing in this standard mandates a particular height and there is no reasons to suggest that [27-1/2]" is not 'usable' by someone in a wheelchair." Def.

Opp. to Pl. Mot. at 19.  The Court agrees that § 5.6.3 on its own is not enough to establish that Items 18 and 32 are accessibility barriers under the 1961 ASA Standards.  Plaintiffs respond, however, that § 3.1 "defines the standard height of a wheelchair as having a height from the floor of 29.5 inches," making a lavatory with a clearance of 27-1/2" not "usable by individuals in wheelchairs."  Pl. Reply at 10-11.  But again, although that is a colorable theory, Plaintiffs refer to § 3.1 for the first time in their Reply; consequently, Defendants have not had the opportunity to respond and the Court cannot grant summary judgment.  Both parties' motions are DENIED.

### f.   Items 20 and 34

Items 20 and 34 relate to the location of the mirrors above the sink in the Men's Restroom (Item 20) and the Women's Restroom (Item 34).  Waters Report at 18, 25-26; ECF 76-3 at 93 (photographs of Women's Restroom in the Waters Report); Pl. Reply at 11.  Specifically, the mirrors are mounted at 52-1/2" AFF, which purportedly violates § 5.6.4 of the 1961 ASA Standards.  Waters Report at 18, 25-26; Pl. Reply at 11.  Section 5.6.4 states:

> Some mirrors and shelves shall be provided . . . at a height no higher than 40 inches above the floor, measured from . . . the bottom of the mirror.

ECF 75-4 at 10.  Defendants have raised no dispute of fact that the mirror in the Men's Restroom violates this provision; accordingly, Plaintiffs' motion is GRANTED as to Item 20.

The Women's Restroom, however, is another story.  As explained above, Plaintiffs' own evidence shows that there is a full-length mirror in the Women's Restroom, in addition to the mirror above the sink.  The Court agrees with Defendants that a full-length mirror would suffice to fulfill § 5.6.4, even if the mirror about the sink is mounted "higher than 40 inches above the floor."  The Court cannot grant summary judgment in Defendants' favor, however, because there is no evidence in the record as to how far above the floor the full-length mirror is mounted; the Court cannot make such a finding from photographs alone.  Nonetheless, the Court advises the parties to come to an agreement regarding the mirrors in the Women's Restroom.  For now, both parties' motions are DENIED as to Item 34.

### g.   Item 21

Item 21 is that the urinal rim is too high at 17-1/2" AFF.  Waters Report at 18.  The Waters

United States District Court
Northern District of California

United States District Court
Northern District of California

Report and Plaintiffs' motion indicate that § 5.6.5 of the 1961 ASA Standards is the relevant standard. *See id.*; Pl. Mot. at 16. It states:

> Toilet rooms for men shall have wall-mounted urinals with the opening of the basin 19 inches from the floor, or shall have floor-mounted urinals that are on level with the main floor of the toilet room.

ECF 75-4 at 10. It is difficult to discern what the standard requires: Must the basin be *exactly* 19 inches from the floor, or merely *no more than* 19 inches from the floor? Defendants read § 5.6.5 to mean that the urinal must be no more than 19 inches from the floor; if true, then Item 21 would be compliant. Def. Opp. to Pl. Mot. at 19. They cite no authority for this view, however. As for Plaintiffs, it is not clear whether they are even asserting a claim based on Item 21. They include § 5.6.5 in the list of the "ASA violations in the men's restroom" in their opening brief, but without any argument. Pl. Mot. at 16. Moreover, the Waters Report contains only the ambiguous statement that "the rim height is compliant with [the ASA] 19" above the floor," Waters Report at 18. Then, in their Reply, Plaintiffs do not respond to Defendants' argument in their Reply. *See* Pl. Reply at 10-11. Under these circumstances, the Court finds that Plaintiffs have abandoned any California Health and Safety Code claim based on Item 21. *Jenkins v. City of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (concluding that plaintiff had abandoned claims not raised in opposition to defendant's summary judgment arguments). Defendants' motion for summary judgment as to Item 21 is therefore GRANTED.

### h.  Items 22 and 35

Items 22 and 35 concern the size of the toilet compartment in the Men's Restroom (Item 22) and Women's Restroom (Item 35): The stall in the Men's Restroom is 38-1/2" wide and the stall in the Women's Restroom is 35-1/2" wide. Waters Report at 19, 26. Plaintiffs say these Items violate § 5.6.2 of the 1961 ASA Standards, which provides that "[t]oilet rooms shall have at least one toilet stall that . . . is 3 feet wide." ECF 75-4 at 10. Defendants contend that the toilet stalls are "compliant, or substantially compliant," Def. Opp. to Pl. Mot. at 19-20, but Plaintiffs disagree. In their view, § 5.6.2 prescribes a precise width of 3 feet (36"), and 38-1/2" and 35-1/2" will not do.

1        Plaintiffs are certainly correct that the plain text of the regulation gives only an absolute

2    width, not a range, ceiling, or floor.  Meanwhile, Defendants have cited no authority for the

3    proposition that "substantial compliance" is sufficient to meet their obligations under the 1961

4    ASA Standards.  The Court further notes that the Ninth Circuit has rejected a "substantial

5    compliance" defense to the ADA where none was provided by the statute.  *See Long v. Coast*

6    *Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001).  Under these circumstances, the Court must

7    adhere to the regulation's unequivocal requirement of a 36"-wide stall.  Because there is no

8    genuine dispute of material fact that Items 22 and Item 35 are not 36" wide, the Court GRANTS

9    Plaintiffs' motion for summary judgment.

                                **i.   Item 42**

11       Item 42 is that the seat cover dispenser in the Women's Restroom is mounted too high,

12   with the "top of the outlet" measured at 60" AFF.  Waters Report at 30.  The Waters Report

13   indicates that this violates § 5.6.6 of the 1961 ASA Standards, which states: "Toilet rooms shall

14   have an appropriate number of towel racks, towel dispensers, and other dispensers and disposal

15   units mounted no higher than 40 inches from the floor."  ECF 75-4 at 10.  Defendants argue,

16   among other things, that Plaintiffs have not shown that the seat cover dispenser was in the

17   restroom as of the 1970s.  Def. Opp. to Pl. Mot at 20.  In other words, Defendants believe they are

18   not obligated to remedy the seat cover dispenser's position if it was added later.  It might be true

19   that the 1961 ASA Standards might not be the applicable accessibility standards if the seat cover

20   dispenser was added later; the California Building Code, for instance, might govern.  It is not true,

21   however, that Defendants are absolved altogether from making the seat cover dispenser accessible.

22   Nevertheless, because Plaintiffs provide absolutely no argument as to Item 42 in their motion or

23   Reply, the Court considers this claim (like the claim based on Item 21) to be abandoned.

24   Defendants' motion for summary judgment as to Item 42 is GRANTED.

                            **j.   Items 44 and 46**

26       The Court has already held that Items 44 and 46 are not within the scope of Defendants'

27   obligations under California Health and Safety Code § 19959.  *See supra* Part IV.E.ii.  The Court

28   therefore does not reach the issue whether these items would violate the provisions of the 1961

1    ASA Standards cited in the Waters Report.  Waters Report at 31 (citing § 5.3.1 as to Item 44 and

2    §§ 4.2.1, 5.1.1 as to Item 46).

3                     **k.   Items 57 and 60**

4          Item 57 is that "the wheelchair space at the back portion of [Theatre 3]" is only 39" deep,

5    which purportedly violates § 3.1 of the 1961 ASA Standards.  Waters Report at 35.  As

6    Defendants correctly point out, however, § 3.1 simply lays out the specifications of a "standard"

7    wheelchair model, "which were used as the basis" for formulating the 1961 ASA Standards.  ECF

8    75-4 at 7.  As explained with regard to Items 3, 27, and 41, Plaintiffs have not shown how

9    Defendants could violate these purely descriptive provisions; indeed, they fail to respond to

10   Defendants' argument altogether.  The Court finds that Defendants have met their summary

11   judgment burden of showing they have not violated § 3.1 and GRANTS their motion.

12         Defendants challenge Plaintiffs' claim based on Item 60—that the maneuvering space on

13   the push side of the entry door to Theater 4 is only 19-1/2", Waters Report at 35—on the same

14   ground.  Def. Opp. to Pl. Mot. at 21.  Because the only provision of the 1961 ASA Standards that

15   Item 60 allegedly violates is § 3.1, the Court likewise GRANTS Defendants' motion for summary

16   judgment.

17                    **l.   Item 64, 66**

18         Items 64 and 66 relate to the surface of the Exterior Entry Court: Item 64 is that there are

19   "excessive slopes and changes in level" and Item 66 is that "[t]he change in level is greater than

20   1/4" vertical" between "concrete sections where the form boards are not at the same elevation as

21   the concrete."  Waters Report at 37-38.  The Waters Report indicates that these Items violate the

22   requirement at § 4.2.2 of the 1961 ASA Standards that public walks "shall be of a continuing,

23   common surface, not interrupted by steps or abrupt changes in level."  ECF 75-4 at 8.  Defendants

24   contend that Plaintiffs have not met their summary judgment burden of showing that a change in

25   level of 1/4" is "abrupt" under § 4.2.2; in their view, a 1/4" change is *de minimus*.  Def. Opp. to Pl.

26   Mot. at 21.

27         The Court agrees that Plaintiffs' measurement alone is not enough to establish that Item 66

28   violates § 4.2.2; they have not, for instance, brought evidence showing that a 1/4" change poses

United States District Court
Northern District of California

United States District Court
Northern District of California

1  accessibility difficulties.  Item 64, meanwhile, is wholly conclusory.  On the other hand, the Court

2  is not prepared to say that 1/4" is, as a matter of law, not "abrupt."  Thus, the Court finds that there

3  is a dispute of material fact as to whether the Exterior Entry Court violates § 4.2.2 and DENIES

4  both motions for summary judgment.

5                  **m.  Items 49, 54, 59**

6         Items 49, 54, and 59 are not challenged by Defendants.  That alone, of course, does not

7  mean that Plaintiffs are entitled to summary judgment.  *See Martinez*, 323 F.3d at 1182 (noting

8  nonmoving party's failure to oppose summary judgment "does not excuse the moving party's

9  affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law").

10  However, the Court has reviewed each Item and finds that Plaintiffs have adequately established

11  violations of § 5.3.2 of the 1961 ASA Standards.  As already stated, that provision requires that

12  "the floor on the inside and outside of each doorway . . . shall extend 1 foot beyond each side of

13  the door," ECF 75-4 at 9.  Item 49 is that the maneuvering space on the pull side of the entry door

14  to Theatre 2 is only 6-1/2"; Item 54 is that the maneuvering space on the pull side of the entry door

15  to Theatre 3 is only 6-1/2"; and Item 59 is that the maneuvering space on the pull side of the entry

16  door to Theatre 4 is only 5-1/2".  *See* Waters Report at 32, 34, 35.  There is no dispute of fact that

17  all three Items are less than the 12 inches required by § 5.3.2, so Plaintiffs' motion for summary

18  judgment is GRANTED.

19             **vii.  Claims under the Uniform Building Code**

20         At this point, the Court pauses to address Plaintiffs' arguments under the Uniform Building

21  Codes ("UBC") of 1973 and 1976.  *See* Pl. Mot. at 17-18.  Specifically, Plaintiffs assert that the

22  UBC was "adopted by the Santa Cruz Building Department" into the Santa Cruz City Ordinances.

23  Pl. Mot. at 17; *see* ECF 75-7, 75-8 (requests for judicial notice of the UBC and its adoption).

24  They further contend that under the UBC, "[t]he entire building should have been made accessible

25  but was not."  Pl. Mot. at 18.

26         This argument is rejected.  The Court simply cannot make out the legal basis for Plaintiffs'

27  attempt to sue under the Santa Cruz City Ordinances.  It is not clear, for instance, if Plaintiffs are

28  asserting independent claims for violations of the Santa Cruz City Ordinances.  The FAC certainly

does not plead claims under the Uniform Building Code or to the Santa Cruz City Ordinances; in fact, it makes no reference to those provisions.  If they do intend to separately sue under the UBC, Plaintiffs have not shown that there exists a private right of action for them to do so.  Nor have Plaintiffs shown that they are applying the appropriate version of the Santa Cruz City Ordinances in citing the 1973 and 1976 versions of the UBC.

Alternatively, if the Santa Cruz City Ordinances are somehow connected to Plaintiffs' other causes of actions, Plaintiffs have not made that connection clear.  They make this argument in the section of their motion that addresses their California Health and Safety Code claims, but they have not established the relevance of the Santa Cruz City Ordinances to those claims.  *See* Pl. Mot. at 18 (saying only that "the basis for liability here is independent of and separate from the above alterations theory").  Although Plaintiffs seem to believe that the Santa Cruz City Ordinances also require compliance with the 1961 ASA Standards, Pl. Mot. at 18, they provide no explanation or authority for that belief.

Under these circumstances, the Court is unable to evaluate Plaintiffs' argument regarding the UBC.  Any motion for summary judgment based on that argument is, accordingly, DENIED.

### viii.    Summary

The Court summarizes its above rulings on Plaintiffs' claims under the California Health and Safety Code, *see* FAC ¶¶ 10-28, as follows:

| Barriers (Item No.) | Ruling |
| --- | --- |
| 4, 12, 18, 29, 32, 34, 64, 66 | • Defendants' Motion is DENIED.<br>• Plaintiffs' Motion is DENIED. |
| 15, 20, 22, 35, 49, 54, 59 | • Defendants' Motion is DENIED.<br>• Plaintiffs' Motion is GRANTED. |
| 3, 21, 42, 44, 46, 27, 41, 57, 60 | • Defendants' Motion is GRANTED.<br>• Plaintiffs' Motion is DENIED. |

### F.    Claims under the Unruh Act

Plaintiffs also assert claims under the Unruh Act, Cal. Civ. Code §§ 51, 52, which provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever," Cal. Civ. Code § 51(b).

Although there are multiple ways to make out an Unruh Act claim, Unruh Act claims are commonly premised on ADA claims.  That is, any violation of the ADA necessarily constitutes a violation of the Unruh Act.  *See* Cal. Civ. Code § 51(f) ("A violation of the right of any individual under the Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section."); *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 670 (2009) ("[A] plaintiff proceeding under section 51, subdivision (f) may obtain statutory damages on proof of an ADA access violation without the need to demonstrate additionally that the discrimination was intentional.").  Unlike the ADA, however, the Unruh Act provides for monetary damages; hence, "litigants in federal court in California often pair state Unruh Act claims with federal ADA claims."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

Here, Plaintiffs have done just that: Their Unruh Act claims are premised on Defendants' alleged violations of the ADA.  *See* FAC ¶¶ 29-35; Pl. Mot. at viii.  The Court ruled on the parties' summary judgment motions as to these alleged violations above, in Part IV.D; these rulings apply equally to the parties' summary judgment motions as to the Unruh Claims.  Of relevance here, the Court found no genuine dispute of material fact that Items 3, 4, 7, 8, 20, 27, 39, 41, 42, 51, 56, and 62 constitute violations of the ADA.

The question then becomes whether Plaintiffs are entitled to damages based on these violations.  The Unruh Act imposes damages "for each and every offense . . . up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto . . . ."  Cal. Civ. Code § 52(a).  Notably, a litigant need not prove she suffered actual damages to recover statutory damages of $4,000.  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000).  It is enough to show that "the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion."  Cal. Civ. Code § 55.56(a).  The statute specifies that there has been a denial of full and equal access "if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion."  *Id.* § 55.56(b).  In other words, statutory damages may be based on both past visits and deterrence from future visits to a noncompliant facility.  Note,

moreover, statutory damages are assessed "based on each particular occasion that the plaintiff was denied full and equal access" and not on each barrier to accessibility.  *Id.* § 55.56(e).

In this case, Plaintiffs seek statutory damages for three occasions on which they were purportedly denied full and equal access: (1) two actual visits to the Nick, on June 18, 2016 and August 7, 2016, and (2) one instance of deterrence for being unable to see the movie *Roma* when it played at the Nick in October 2018.  Pl. Mot. at 24-25.  That totals $12,000.  Plaintiffs explicitly waive entitlement to any damages beyond $12,000.  Pl. Mot. at 24-25.  The Court considers whether Plaintiffs are entitled to summary judgment as to each of these occasions below.

### i.   Visits in June and August 2016

Plaintiffs seek to establish that they were denied full and equal access on June 18, 2016 and August 7, 2016 under California Civil Code § 55.56(c), which specifies that "a violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation."  At the outset, the Court notes that Plaintiffs must have encountered one of the barriers that the Court deemed a violation of the ADA, i.e., Item 3, 4, 7, 8, 20, 27, 39, 41, 42, 51, 56, or 62.  If the Court denied summary judgment on the ADA claim, then it must also deny summary judgment as to any Unruh Act claim premised on that barrier.

Here, Plaintiffs have introduced evidence that they personally encountered various accessibility barriers on each visit and that they suffered difficulty, discomfort, and embarrassment as a result.  *See* FAC ¶ 18.  Such evidence comprises their own testimony, *see* ECF 70 ("Lane Decl.") and ECF 71 ("Daugherty Decl."), and copies of their ticket stubs, *see* ECF 70-2 (Lane's ticket stub from June 18, 2016), 71-2 (Daugherty's ticket stub from June 18, 2016); 70-3 (Lane's ticket stub from August 7, 2016); 71-3 (Daugherty's ticket stub from August 7, 2016).

Plaintiffs' declarations and ticket stubs certainly suffice to meet their initial burden of production as to the fact of their visits on June 18, 2016 and August 7, 2016.  However, the Court observes that Plaintiffs' declarations do not specifically address all 66 barriers.  Most of the statements in the declarations are general, with Plaintiffs stating that they "encountered many barriers which made it difficult . . . to access certain facilities and services," Lane Decl. ¶ 7;

Daugherty Decl. ¶ 7.  These vague attestations are not sufficient to establish that Plaintiffs encountered Items 3, 4, 7, 8, 20, 27, 39, 41, 42, 51, 56, or 62—the only Items that can support a grant of summary judgment.  To the extent the declarations do focus on specific barriers, most of those are barriers as to which the Court denied summary judgment under the ADA.

Thus, as to the June 18, 2016 visit, Plaintiffs have not produced specific evidence that they encountered any of these Items and were harmed as a result.  Accordingly, the Court must DENY Plaintiffs' motion for summary judgment as to the June 18, 2016 visit.

The same problem precludes summary judgment for Plaintiff Daugherty as to the visit on August 7, 2016:  His declaration does not touch upon any of the Items found to be violations of the ADA.

Luckily for Plaintiff Lane, however, the evidence regarding her August 2016 visit does address one of the ADA barriers as to which the Court granted summary judgment.  Plaintiff Lane attests that she encountered Item 39 when she attempted to use the Women's Restroom during that visit.  Item 39, is that a "rear wall grab bar is not provided"; the Court granted summary judgment that Item 39 constitutes a violation of the ADA, *see supra* Part IV.D.iii.f.  Lane states: "I attempted to transfer to the toilet but was unable to do so due to the lack of transfer space *and the lack of properly configured grab bars*."  Lane Decl. ¶ 11.  She then goes on to say that she experienced "great discomfort as a result of being unable to use the restroom facilities."  *Id.*  This evidence suffices to meet Plaintiff Lane's initial burden of production as to the August 2016 visit.

In response, Defendants do not present any contradictory or competing evidence.  They nonetheless assert that there is a disputed issue of fact as to "whether [Plaintiffs], in fact, personally encountered access barriers at the Theater."  Def. Opp. to Pl. Mot at 24.  Specifically, Defendants contend that Plaintiffs' testimony is not credible due to alleged "inconsistencies" in their stories.

It is true, of course, that credibility determinations are for the trier of fact and that "serious issues" undermining the credibility of a movant's witness may preclude summary judgment. *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 968 (9th Cir. 1981).  On the other hand, the Ninth Circuit has made clear that "neither a desire to cross-examine an affiant nor an unspecified hope of

United States District Court
Northern District of California

1    undermining his or her credibility suffices to avert summary judgment." *Nat'l Union Fire Ins. Co.*

2    *of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983); *see also Siddiqui v. AG*

3    *Commc'n Sys. Corp.*, 233 Fed. App'x 610, 613 (9th Cir. 2007) ("Siddiqui's challenges to the

4    weight of the evidence and the credibility and bias of potential witnesses do not create triable

5    issues of fact that would preclude summary judgment.").

6           Having reviewed the handful of alleged inconsistencies between the two Plaintiffs'

7    deposition testimony, the Court concludes that they do not create a genuine issue of material fact

8    as to the August 2016 visit.  First of all, though Defendants say these are inconsistencies, there are

9    no actual contradictions; rather, Defendants point to facts that one or both Plaintiffs reported in

10   their declaration but "did not recall" during their deposition.  These are not "clear and

11   unambiguous" inconsistencies that fatally undermine the declarations.  *Van Asdale v. Intl Game*

12   *Tech.,* 577 F.3d 989, 998 (9th Cir. 2009).  Moreover, none of the supposed inconsistencies involve

13   the particular fact at hand: whether Plaintiff Lane encountered Item 39 in the Women's Restroom.

14   *See* Def. Opp. to Pl. Mot. at 24 (citing ECF 78-5 at 13).  At most, the alleged inconsistencies

15   amount to a "general erosion" of Plaintiffs' credibility, which is not sufficient grounds to deny

16   summary judgment.  *Ross v. City of Tustin*, No. SACV182219JVSDFM, 2020 WL 1269839, at *6

17   (C.D. Cal. Jan. 7, 2020); *cf.* Garcia v. Cty. of Los Angeles, No. CV 12-848-GW(FFMX), 2013

18   WL 12165670, at *5 (C.D. Cal. Apr. 29, 2013) ("[E]ven if the deposition testimony is somewhat

19   inconsistent with Plaintiff's declaration, the Court would not find that these inconsistencies are

20   sufficiently glaring" to warrant excluding the declaration).

21          Defendants also contend that Plaintiffs were obligated to ask the Nick's employees for

22   assistance, and that their failure to do so bars their claims.  Def. Opp. to Pl. Mot. at 23.  They cite a

23   single case from the District of Colorado, *Colorado Cross-Disability Coal. v. Too (Delaware),*

24   *Inc.*, 344 F. Supp. 2d 707, 715 (D. Colo. 2004)).  In holding that plaintiffs were not deprived of

25   access to Defendant Too's merchandise, the court explained: "If Plaintiffs encounter movable

26   displays in their way, they may ask for help from salespeople who, under Too's own policies, will

27   assist them by "graciously" moving the display."  *Id.*  Here, Defendants attest that their employees

28   "were ready and able to assist Plaintiffs overcome any access issues—particularly with the snack

counter." *Id.* (citing Fant. Decl. ¶ 15).  But even if this argument might have some force as to the snack counter, it does not extend to the Women's Restroom.  For one, Defendants have not introduced evidence that their staff are available to assist customers in the restrooms.  *See* Fant. Decl. ¶ 15.  More to the point, the case Defendants cite dealt with "movable displays"—not permanent fixtures like the grab bar at issue.  The suggestion that an individual is not deprived of access to the toilet because an employee could assist her is simply not reasonable.

In sum, Defendants have not shown that they are entitled to summary judgment as to any of the above Unruh Act claims; their motion is DENIED.  At the same time, Plaintiffs have not met their summary judgment burden on their motions concerning the June 18, 2016 visit or on Plaintiff Daughtery's motion concerning the August 7, 2016 visit; those motions are DENIED.  The Court GRANTS summary judgment in Plaintiff Lane's favor only as to the August 7, 2016 visit and awards Plaintiff Lane $4,000.

### ii.   Deterrence on October 2018

Plaintiffs also seek damages for a single instance of deterrence based on their desire to see *Roma* when it was showing at the Nick in October 2018.  The Unruh Act lays out two requirements for statutory damages based on an instance of deterrence:

> (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.
>
> (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.

Cal. Civ. Code § 55.56(d).

Plaintiffs have introduced evidence in the form of their declarations that *Roma* was playing at the Nick in October 2018, that they wanted to see the film, and that they were deterred from doing so by "the inaccessible features."  Lane Decl. ¶ 12; Daugherty Decl. ¶ 11.  Again, the declarations themselves do not identify all of these "inaccessible features."  However, the Court observes that October 2018 post-dates the April 2017 site inspection in this case, which means that Plaintiffs had actual knowledge of Items 3, 4, 7, 8, 20, 27, 39, 41, 42, 51, 56, and 62 from that

59

1   inspection.  Finally, the Court is satisfied that these 12 barriers to accessibility would have actually

2   denied Plaintiffs full and equal access to the Nick.  The Court concludes that Plaintiffs have

3   carried their burden of showing they were deterred from accessing the Nick on October 2018.

4         Defendants do not raise any dispute as to the foregoing.  Their only argument against

5   awarding statutory damages is that "Plaintiffs have a duty to mitigate [their] damages and must

6   provide a reasonable explanation for repeatedly going back to a location with purportedly known

7   access barriers . . . but have utterly failed to do so."  Def. Opp. to Pl. Mot. at 25 (citing Cal. Civ.

8   Code § 55.66, 2012 Note).  This argument is wholly undeveloped.  Defendants have not identified

9   any source for this duty to mitigate or explained what it requires Plaintiffs to do.  Indeed, some

10   courts in this Circuit have rejected the imposition of a duty to mitigate.  *See, e.g.*, *Johnson v.*

11   *Guedoir*, 218 F. Supp. 3d 1096, 1102-03 (E.D. Cal. 2016) ("This section [55.56] does not create a

12   duty to mitigate, but merely states that where one exists the section does not alter said duty.");

13   *Schutza v. City of San Diego*, No. 313CV2992CABKSC, 2017 WL 3149509, at \*7 (S.D. Cal. July

14   24, 2017) ("The Court continues to find that there is no requirement that Plaintiff mitigate

15   damages when he is merely seeking statutory damages."), *aff'd*, 756 Fed. App'x 768 (9th Cir.

16   2019).  Under these circumstances, the Court does not believe that mitigation is a material issue.

17         Because Defendants have not established a genuine dispute of material fact as to Plaintiffs'

18   entitlement to deterrence-based statutory damages claim, the Court GRANTS summary judgment

19   in both Plaintiffs' favor.  Each Plaintiff shall be awarded $4,000.

20   **G.**   **Claims under the California Disabled Persons Act**

21         The FAC also contains claims under the California Disabled Persons Act ("CDPA").  The

22   CDPA guarantees that "[i]ndividuals with disabilities shall be entitled to full and equal access, as

23   other members of the general public, to accommodations, advantages, facilities, ... places of public

24   accommodation, amusement, or resort, and other places to which the general public is invited

25   . . . ."  Cal. Civ. Code § 54.1(a)(1).  The statute then goes on to define "Full and equal access" as

26   "access that meets the standards of Titles II and III of the [ADA] and federal regulations adopted

27   pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall mean

28   access that meets those higher standards."  Cal. Civ. Code § 54.1(a)(3).  The CDPA provides for

money damages for violations of the right to "full and equal access," including "actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000)." *See* Cal. Civ. Code § 54.3(a).  As with the Unruh Act, statutory damages may be had without a showing of actual damages.  *See Munson*, 46 Cal. 4th at 677-78.

In other words, § 54.1 is "a means of enforcing separate, applicable accessibility standards" under either the ADA or state law.  *Earll v. eBay, Inc.*, 599 Fed. App'x 695, 696 (9th Cir. 2015) (Because "Earll failed to allege violation of any separate, applicable accessibility standard" such as the ADA, "Earll's Disabled Persons Act claim fails as a matter of law.").  Specifically, as relevant here, a violation of the ADA or the California Health and Safety Code also constitutes a violation of the CDPA.  Thus, Plaintiffs would be entitled to summary judgment on the issue of whether an Item violates the CDPA if and only if the Court granted summary judgment on the associated ADA claim or California Health and Safety Code claim.  Plaintiffs would then be required to demonstrate that "he or she was denied equal access on a particular occasion" as a result of the violation, just as the Unruh Act.  *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1177 (9th Cir. 2010) (quoting *Café Royale*, 218 Cal. App. 3d at 183) (internal quotation marks omitted).

However, neither party addresses the CDPA claims in their motions for summary judgment.  In particular, Plaintiffs have not presented a request for a particular amount of damages or set forth the facts demonstrating their entitlement to such damages.  What Plaintiffs do make clear is that they assert their CDPA claims in the alternative—i.e., if the Court does not hold Defendants liable under the Unruh Act.  Pl. Mot. at viii.  That is because "[a] person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act."  Cal. Civ. Code § 54.3(c).  That is, if the Court awards damages under the CDPA, it may not award damages under the Unruh Act, and vice versa.  *See Rodriguez*, 10 F. Supp. 3d at 1074 (explaining that "double recovery" under these statutes is "not permitted).  And remember, the Unruh Act authorizes $4,000 in statutory damages compared to the CDPA's $1,000.  Consequently, Plaintiffs may have elected not to focus on their CDPA claims until their Unruh

1   Act claims have been resolved.

2        In light of the foregoing, the Court DENIES any motion for summary judgment as to

3   Plaintiffs' CDPA claims.

4        **H.    Claims under the UCL**

5        Last, the Court comes to Plaintiffs' claims under the UCL, Cal. Bus. & Prof. Code §§

6   17200 *et seq.*  FAC ¶¶ 36-45.  The UCL prohibits any "unlawful, unfair or fraudulent business

7   practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

8   The California Supreme Court has made clear that this statute prohibits three separate types of

9   unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent

10  acts or practices.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163,

11  180 (1999).  Plaintiffs appear to bring their claims under both the unlawful and unfair prongs.  *See*

12  FAC ¶ 42.  The "unlawful" prong of the UCL "borrows violations of other laws and treats them as

13  unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech*, 20

14  Cal. 4th at 180 (internal quotation marks omitted).  Plaintiffs predicate their claim under the

15  "unlawful prong" on Defendants' alleged violations of the ADA, the California Disabled Persons

16  Act, the Unruh Act, and the California Health and Safety Code.  FAC ¶¶ 41-42.  As for the "unfair

17  prong," unfair business practices include those practices that are "immoral, unethical, oppressive,

18  unscrupulous or substantially injurious to consumers."  *Drum v. San Fernando Valley Bar Ass'n*,

19  182 Cal. App. 4th 247, 257 (2010).  Plaintiffs believe Defendants' acts of discrimination against

20  persons with disabilities qualify.  *See* FAC ¶¶ 42-43.

21       Of relevance here, a person may bring a claim under the UCL only if he "has suffered

22  injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. &

23  Prof. Code § 17204.  To satisfy this requirement, the plaintiff must "(1) establish a loss or

24  deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and

25  (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or

26  false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

27  310, 322 (2011).  Note that the plaintiff bears the burden of establishing these elements.  Note also

28  that the "injury must be economic, at least in part"; other forms of injury-in-fact under Article III

standing do not suffice.  *Id.* at 323-24.  Here, Defendants ask for summary judgment on the ground that Plaintiffs have failed to show that they suffered an economic injury.  Def. Mot. at 21.

Plaintiffs provide no response in any of their briefing on the motions for summary judgment.  The Court observes that in the FAC, Plaintiffs allege they "have lost money or property as a result of defendants' unfair business practices and policies"  because, *inter alia*, "although they paid the same [ticket] price," they "could not use some of the movie theater complex facilities that are offered to all customers."  FAC ¶ 43.  This allegation could be considered a theory under which Plaintiffs "acquire[d] in a transaction less, than he or she otherwise would have" as a result of Defendants' failure to make the Nick accessible.  *Kwikset Corp.*, 51 Cal. App. 4th at 323. However, the Court does not reach the question whether the FAC presents a colorable theory of economic injury because Plaintiffs' failure to respond to Defendants' argument for summary judgment amounts to an abandonment of their UCL claims.  *Jenkins*, 398 F.3d at 1095 n. 4. Defendants' motion for summary judgment is GRANTED.

## V.    ORDER

To summarize, the Court rules on the parties' cross-motions for summary judgment, ECF 69, 76, as follows:

- The Court DISMISSES Plaintiffs' various state and federal law claims as to Items 6, 14 and 28 for lack of standing.

- The Court DENIES Defendants' motion for summary judgment as to the ADA claims. The Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for summary judgment as to the ADA claims.

- The Court GRANTS IN PART and DENIES IN PART each parties' motions for summary judgment as to the California Health and Safety Code claims.

- The Court DENIES Defendants' motion for summary judgment as to the Unruh Act claims.  The Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for summary judgment as to the Unruh Act claims.

- The Court DENIES both parties' motions for summary judgment as to the CDPA claims.

- The Court GRANTS Defendants' motion for summary judgment as to the UCL claims.

1

2    **IT IS SO ORDERED.**

3

4    Dated: April 24, 2020

5
                                                      _____

6    BETH LABSON FREEMAN
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California